MARDEN et al. v. CAMPBELL PRINTING-PRESS & MANUFACTURING CO.

CAMPBELL PRINTING-PRESS & MANUFACTURING CO. v. MARDEN et al.

(Circuit Court of Appeals, First Circuit. May 4, 1895.)

Nos. 126, 127.

1. APPEAL—TIME OF TAKING—PETITION FOR REHEARING.
   A petition for rehearing which is not filed within the 15 days limited by rule 16 of the circuit court for the First circuit does not operate to extend the time within which defendants may appeal.

2. SAME—DISMISSAL OF APPEAL.
   An appellate court has no power to remand except for the purpose of giving effect to some judgment of its own, and hence it cannot remand

a suit in equity merely for the purpose of a rehearing of the cause in the court below in view of new matter to be produced by the defeated party.

**3. Same—Appeals from Interlocutory Decrees.**
The right given by section 7 of the judiciary act of March 3, 1891, is a privilege or option, and, whether availed of or not, it in no way affects or diminishes the right to appeal from the final decree to be rendered in the cause; and hence appellants thereunder may be allowed to dismiss their appeal without prejudice to their right to take a subsequent appeal.

**4. Same—Final Appealable Decree.**
A decree which declares certain claims of a patent valid and infringed, but holds others invalid, and that others still are not infringed, is not a final decree against complainant in respect to the claims found invalid or not infringed, so as to give him a right of appeal before the case is finally disposed of after the accounting.

**5. Same—Appeal from Interlocutory Decrees—Circuit Courts of Appeals**
The rule that upon an appeal from an interlocutory decree declaring infringement of a patent, and directing an injunction and accounting, the circuit court of appeals may go fully into the merits, and finally dispose of the whole case, is one of equitable convenience, to be applied only when the full record is brought before it, and when the decree below was entered after a full hearing. Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, explained.

**6. Same—Appeal by Complainant from Interlocutory Decree.**
A complainant in a patent case has no right, under section 7 of the judiciary act of March 3, 1891, to a cross appeal in respect to so much of a decree as declares that certain claims of his patent are void, and that certain others are not infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by the Campbell Printing-Press & Manufacturing Company against George A. Marden and Edward T. Rowell, copartners doing business under the name of Marden & Rowell, for the infringement of letters patent No. 292,521, issued January 8, 1884, to Wellington P. Kidder, for a printing machine, and No. 376,053, issued January 3, 1888, to John H. Stonemetz, for a web-printing machine. The circuit court entered the usual decree finding infringement of the 1st, 2d, and 7th claims of the Kidder patent, and the 12th claim of the Stonemetz patent; noninfringement of the 5th, 7th, 10th, and 17th claims of the Stonemetz patent; and that the 8th claim of the Stonemetz patent is void for want of novelty. 64 Fed. 782. Both parties appealed, the appeal of the complainant being directed to that part of the decree which refused to find in his favor in respect to certain of the claims.

Samuel R. Betts (Frederic H. Betts, on the brief), for George A. Marden and another.

Louis W. Southgate (Frederick P. Fish, on the brief), for Campbell Printing-Press & Manuf'g Co.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. This was a bill by a patentee alleging infringement. After hearing the cause on bill, answer, and proofs, the circuit court entered the usual decree directing a perpetual injunction and an accounting on a portion of the claims contained in

the letters patent in suit, and adjudged other claims invalid; and it further determined, as to still other claims, that defendants had not infringed them. The decree also stated that certain other claims had been withdrawn from the consideration of the court, and no finding was made touching them. Thereupon the respondents below appealed under the seventh section of the judiciary act of March 3, 1891, which was followed by cross appeals by the complainant below touching the claims with reference to which the circuit court had refused to find in its favor. After the decree in the court below, and simultaneously with the taking of their appeal, defendants below filed a petition for a rehearing, setting up the alleged discovery of certain new and essential proofs. The petition, however, was not filed within the 15 days limited by rule 16 of the circuit court, and therefore did not operate to extend the time within which the defendants below could appeal, under the circumstances found to exist by this court in Andrews v. Thum, 12 C. C. A. 77, 64 Fed. 149.

The defendants in the court below have filed two motions in this court, which we have considered. The first is that the cause be remanded to the circuit court "for the purpose of a rehearing of the said cause," having reference undoubtedly to the new matter presented to the circuit court, to which we have referred. This court, however, has no power to remand except for the purpose of giving effect to some judgment of its own. Roemer v. Simon, 91 U. S. 149; Smith v. Weeks, 3 C. C. A. 644, 53 Fed. 758. This is so essential by fundamental rules of practice that it need only be stated. To remand under any other circumstances would necessarily operate as a dismissal. It is, however, entirely plain that the appeal given by the seventh section of the act referred to is a privilege or option, and in no way affects or diminishes the right to appeal from the final decree; and as the defendants below, on receiving from this court an oral intimation of the views above expressed, elect to dismiss their appeal, without prejudice to their right to take any other appeal which the law may give them, and without prejudice to the questions which may thus be raised, we permit them so to do.

The second motion of the defendants below was to dismiss the cross appeal of the complainant below. The question is whether the complainant below was entitled to take a cross appeal, or to appeal in its own right, from the interlocutory decree. This question not only compels us to examine the statute itself, but also, to a certain extent, to restate the decisions of this court in Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, and Gamewell Fire Alarm Tel. Co. v. Municipal Signal Co., 9 C. C. A. 450, 61 Fed. 208. We are unable to see any doubt as to the intent, scope, or effect of these decisions, and yet they seem to have been misunderstood to some extent. From the beginning of the federal judicial system, no appeal was allowed to the supreme court except by analogy to a writ of error; and, as the latter could only go from a final judgment, so the former, by statute, has always been expressly limited to a final decree. This was so in the original judiciary act of 1789, and in the amendatory act of 1803, as re-enacted in sections 691 and 692 of the Revised Statutes. This limitation has been for the most part very strictly

construed.   Perhaps this has been influenced by the fact of the long
delays which would come to a cause by taking it through the supreme
court, in the absence of any provision such as is found in the seventh
section of the act of March 3, 1891, to the effect that the case may to
a certain extent proceed in the lower court, notwithstanding the ap-
peal, and by the desire to prevent this delay from being multiplied
by numerous appeals in the same cause.   On the other hand, in Eng-
land, at least so far back as the middle of the eighteenth century,
appeals have freely been granted in interlocutory matters, including
appeals to the house of lords.   This gave rise to delays (Hovey v.
McDonald, 109 U. S. 150, 160, 3 Sup. Ct. 136), but far short of those
which would occur under the federal judicial system as it has hereto-
fore existed.   As a partial offset, however, the English courts, in-
cluding the house of lords, have been accustomed to use a certain
discretion with reference to appeals from interlocutory orders, to
the extent of availing themselves of the opportunity of disposing
finally of the case against the complainant when it was apparent that
the appeal from the interlocutory order brought up so much of the
case on his behalf as would enable the appellate court safely to do so.
This is illustrated by a very early case: Ellis v. Segrave, 7 Brown,
Parl. Cas. 331, 344, decided in May, 1760.   This was an appeal from
an order directing a feigned issue for a jury.   As the appeal brought
up the complainant's prima facie case, the house of lords was able,
not only to reverse the order directing the issue, but also to dismiss
the original bill.   As shown in Richmond v. Atwood, ubi supra, this
is the recognized rule of practice wherever appeals from interloc-
utory orders are allowed.   The great convenience and value of the
rule as applied generally, and especially as applicable under the act
of March 3, 1891, cannot be questioned.

We have already said that the provisions of the statute allowing
appeals from final decrees only had been strictly construed, and yet
the complainant below claims that so much of the decree below as
adjudged certain claims invalid, or not infringed, was final, and en-
titled the complainant to appeal, independently of the seventh sec-
tion of the act of March 3, 1891.   On the contrary, the practice has
been so continuous for so long a time the other way, and with such
universal acquiescence, that this proposition, so far as we know, has
never before been made, nor any necessity arisen for its adjudica-
tion.   This long-continued recognition of the rule ought to be of itself
a sufficient answer to the complainant's proposition.   There have
been exceptional instances where the case below has been severed
and appeals allowed from a decree which did not complete the en-
tire case.   Forgay v. Conrad, 6 How. 201, and Potter v. Beal (decided
by this court) 2 C. C. A. 60, 50 Fed. 860, were of this exceptional
class.   In those cases the appeals were allowed ex necessitate rei, as
in each case the court below not only severed the matter appealed
from, but was proceeding to execution.   The general rule, however,
is undoubtedly expressed, as to writs of error, in Holcombe v. Mc-
Cusick, 20 How. 552, 554, as follows:

"It is the settled practice of this court, and the same in the king's bench
in England, that the writ will not lie until the whole of the matters in

controversy in the suit below are disposed of. The writ itself is conditional, and does not authorize the court below to send up the case unless all the matters between the parties to the record have been determined."

This statement of the rule was applied to equity appeals in Hohorst v. Packet Co., 148 U. S. 262, 13 Sup. Ct. 590. The settled practice of the supreme court touching appeals and writs of error is such as to prevent the same case reaching it a multiplicity of times, so far as practicable to accomplish this; and, moreover, by the settled modes of proceedings in equity in a cause of this kind, although there may be an interlocutory finding declaring certain claims void and others valid, yet there is only one final decree. It would be contrary to all well-conceived notions to imagine two final decrees in a patent cause of this character. The proposition of the complainant below in this direction cannot be entertained.

As a new question, it must be admitted that much might have been said in favor of the proposition that, where the circuit court has granted a perpetual injunction, as in this case, and proceeded immediately to execute it, so much of the case is ex necessitate rei severed and appealable; but as early as Barnard v. Gibson, 7 How. 650, it was determined otherwise by the supreme court. At the conclusion of its opinion in that case, the court referred to the claim of the great hardship involved in the enforcing of an injunction against the defendants, which might afterwards be held by the supreme court erroneous, and to the consequent remediless condition of the defendants under those circumstances. Touching this, the court said, on page 658, as follows:

"The hardship stated is an unanswerable objection to the operation of the injunction until all the matters shall be finally adjusted. If the injunction has been inadvertently granted, the circuit court has power to suspend it or set it aside until the report of the master shall be sanctioned. And unless the defendants below are in doubtful circumstances, and cannot give bond to respond in damages for the use of the machines, should the right of the plaintiff be finally established, we suppose that the injunction will be suspended. Such is a correct course of practice, as indicated by the decisions of this court, and that is a rule of decision for the circuit court."

It is, however, a matter of history that this caution from the supreme court has been too largely disregarded by the circuit courts; and, in some cases, all the hardship claimed in Barnard v. Gibson as possible, and even greater hardships, have resulted. Out of this undoubtedly grew the seventh section referred to.

An examination of the reports will show that the relief which this seventh section intended to give was needed as much in behalf of those against whom perpetual injunctions had issued, after hearing on bill, answer, and proofs, as in behalf of those who suffered from merely ad interim decrees which were subsequently found to be erroneous. One example is Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, wherein an interlocutory perpetual injunction was issued in 1874, the patent expired in 1879, and the decree ordering the injunction was reversed by the supreme court in 1884. The amounts involved were very large, said to run into the hundreds of thousands of dollars, and the loss, as to which the defendants below were remediless, might

have been very great. Numerous other examples equally probative of the proposition we make are accessible. On this account this court has been inclined to the opinion that the remedial provisions of the seventh section referred to were to be construed as such, and were not to be limited so as not to meet a large part of the evils needed to be remedied, and which part was as conveniently covered by it as any other. Assuming this to be correct, and assuming that a decree for an injunction like that in the pending cause is within the purview of the seventh section referred to, it follows that the whole record touching the merits of the decree, so far as it supports the injunction, comes up before the court of appeals, or can come there, so that court has before it everything in this respect which the circuit court had, or which the court of appeals would have on an appeal from a final decree. So it is apparently an absurd proposition that, under such circumstances, the court of appeals should shut its eyes and dispose of the question as perhaps it might dispose of an appeal from a mere ad interim injunction. Passing by this absurdity, there would follow another apparent absurdity in the proposition that, on such appeal, this court should pass on the merits, and order the injunction dissolved, because on the merits it found the patent in question invalid or not infringed, and that yet the court below should proceed in the vain and fruitless pursuit of so much of the sequence of the litigation as comes from that part of the same decree which orders an accounting. Such would be the result if, on an appeal like this at bar, this court had no jurisdiction except over the injunction itself. At this point, the settled practice of the English chancery came to our assistance, as appears by the determination in Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, already referred to. It is apparent, however, from the closing sentences in Richmond v. Atwood, that the rule is one of equitable convenience, to be applied when the full record is brought before us on account of an appeal against an injunction granted by an interlocutory decree after a full hearing. There is no indication in Richmond v. Atwood of any disposition to go further than this, or to permit other parts of a decree to be brought up by cross appeals, or appeals of the complainant below, for the purpose of being heard as on an appeal from a final decree. Under the circumstances of Richmond v. Atwood the injunction covers the entire case, and thus an appeal from the injunction brings up the whole decree, and necessarily the whole record, so that the court is required, for the mere purpose of adjudicating touching the injunction, to examine on appeal the entire cause; and so no detriment to the court or the parties can come by its thereupon disposing of the merits, and entering orders to the circuit court analogous to those entered upon an appeal from a final decree. This, however, is a very different thing from reaching out for parts of the record, and of the decree below, not covered by the injunction order. While it should not be said that Richmond v. Atwood, and the rules determined by it, are limited to cases in the precise condition of Richmond v. Atwood itself, yet it is entirely clear, for the reasons which we have stated, that it was not therein intended to embrace within the scope of the conclusions in that case

the disposition, as on its merits, of the entirety of an interlocutory decree of the character of the one at bar, which the injunction touches only in part. We think the seventh section in question did not confer on the complainant below in this case any right to an appeal. It is true that, if we look only at the letter of the statute, we might well be asked to hold otherwise; but an enactment which has been fitted into the great system of equity practice and proceedings must be so constructed as to adjust itself to the fabric of which it is made a part. There was no mischief complained of except as against parties defendant suffering from injunctions. There was no special occasion for congress to legislate except in their behalf. This, however, would not conclusively enable the court to restrict language general in its character; but it is the settled principle of the law of appellate proceedings that no one can appeal from a decree who is not prejudiced by it. The only person prejudiced in the sense of the law by a decree of the character of that in the case at bar is the defendant, and he is prejudiced only so far as the injunction order operates against him. While the complainant suffers delay and expense by reason of a partial adjudication against him, if, on appeal from the final decree, that partial adjudication should be reversed, yet, in the sense of the law, he is not prejudiced thereby, because no judgment has gone against him. What has an appearance of a decree against him, so far as embraced in the interlocutory proceeding, is only a finding of the court. It is sufficient to bar further proceedings in the cause, so far as the claims passed on are concerned; but it is effectual for nothing more, and is not pleadable as a judgment in any subsequent litigation. Therefore defendants do not stand in the position of parties prejudiced in the sense of the law, and were not entitled to an appeal.

This undoubtedly has always been the view of this court, and, so far as we are aware, of all the other circuit courts of appeals. We are not aware that it has ever before been even suggested that a complainant is entitled to an appeal under the seventh section. In Gamewell Fire Alarm Tel. Co. v. Municipal Signal Co., 9 C. C. A. 450, 61 Fed. 208, already referred to, the court decided that, where the interlocutory injunction terminated by force of law pending the appeal, there remained nothing for the judgment of this court to act on, and that this court would therefore not go any further, nor consider whether or not the injunction was properly granted, and that it could only dismiss the appeal. This means that the backbone of our jurisdiction under the seventh section is so much of the decree as relates to the injunction; and it necessarily follows, from the views therein entertained, that, so much of the case as is covered by the injunction having been disposed of, no basis remains for further proceedings on the part of this court. We need not, however, discuss this question to any further extent, because the act of February 18, 1895, has so far modified the seventh section referred to as to open up possibilities of appeal by the complainant which did not before exist, and any judgments which we may now pronounce, beyond disposing of the precise question before us, would evidently soon prove obsolete, and probably of no importance. We will, however, remark

that the practice in the English chancery appears to be substantially as claimed by the complainant below, and we admit that it has its conveniences to a certain extent. Nevertheless, to hold that in this respect we can follow the English practice would be to beg the question; that is, to hold at the outset that the seventh section is to be construed as giving the general privilege of appeal from an interlocutory order which exists as a common right in the English equity system. In view of the fact that the appeal given by the seventh section is optional, it follows, as already said, that defendants, omitting to take that appeal, would not be prejudiced by such omission with reference to an appeal from a final decree; and it further follows that any disposition which this court may make of an appeal under the seventh section, other than one involving a determination of the merits, cannot prejudice any appeal afterwards taken. Therefore we permit the defendants below to dismiss their appeal, as elected by them.

It is ordered that the appeal of the defendants below be dismissed, without prejudice to any proceedings in the circuit court, or to their right to take any subsequent appeal, and without prejudice to the questions which may be raised by such subsequent appeal, if lawfully taken, but with costs for the complainant below, and that the appeal of the complainant below be dismissed, with costs for the defendants below.