WESTERN ELECTRIC CO. v. WILLIAMS–ABBOTT ELECTRIC CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1901.)

No. 904.

1. PATENTS—VALIDITY—TELEPHONE CALL BOXES.
     The Gray patent, No. 309,617, for improvements in telephone call boxes, which claims broadly "means" or "mechanism" for automatically breaking and holding open the short circuit during the operation of signaling, the specific device therefor invented by the patentee being disclaimed, and made the subject of a separate application, is void as to all three of its claims, in view of the disclaimer, which takes out of the patent all that was patentable in the invention, leaving it merely the equivalent of a claim for a function.

**2.** APPEAL—INTERLOCUTORY DECREE—DENIAL OF INJUNCTION.

Act June 6, 1900, amending section 7 of Act March 3, 1891, creating the circuit courts of appeals, relating to appeals from interlocutory orders and decrees, repealed, by implication, the prior amendment of February 18, 1895, and, as the section stands since the later amendment, an appeal does not lie from an interlocutory decree denying an injunction.

**8.** PATENTS—SUITS FOR INFRINGEMENT—RIGHT OF APPEAL FROM INTERLOCUTORY DECREE.

An appeal does not lie by a complainant from an interlocutory decree dismissing a bill for infringement of a patent as to one claim of the patent, but sustaining it and directing an accounting as to others; but the right to appeal from the dismissal is suspended until the final decree, when the dismissal, and any other action prejudicial to the complainant, can be brought up by a single appeal.

Cross Appeals from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This is a suit in equity in which the Western Electric Company complains of the infringement by the Williams-Abbott Electric Company, its president and treasurer, of rights secured by letters patent No. 309,617, issued December 23, 1884, to Elisha Gray, as assignor of the complainant, for improvements in telephone call boxes. The answer denies that the invention covered by the patent involved any substantial novelty or anything patentable; denies that Gray was the first and true inventor of the devices therein described; avers that they were previously described in certain former publications and patents, which are enumerated; and denies infringement. A replication to the answer having been filed, the parties took proofs, and on the hearing the circuit court dismissed the bill as to the first claim of the patent as being merely for a function, sustained the other two claims,—the second and third,—and found that the defendant had infringed the same. A decree was accordingly entered for the complainant in respect of those claims, ordering an injunction and an accounting of damages and profits (83 Fed. 842). The defendants have appealed from that part of the decree which orders an injunction against them, and the complainant has appealed from that part of the decree which denies the validity of the first claim of their patent. The subjects of the controversy are stated in the opinion which follows.

Albert Lynn Lawrence and George P. Barton, for appellant.

Charles C. Bulkley, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, after making the foregoing statement of the pleadings and proceedings in the case, delivered the opinion of the court.

The invention of Gray relates to the construction of the apparatus employed in telephone call boxes, and more particularly to certain devices for automatically opening and holding open the circuit over the shunt line, or by-path, by which the incoming current effecting the call at the particular station is taken around the magneto-electric machine which is located within the call box, and is employed for generating the outgoing or signaling current. The incoming line runs to the generator, and thence out, and the resistance of the generator is so great as to make a serious obstruction to the passage of the current through it. To obviate this difficulty a line of low resistance is connected with the main line at a short distance before the latter reaches the generator, and is carried around it to connect with the return wire out. The

generator is thereby cut out of the circuit, and the current passes easily around it, and out of the local apparatus. But, when the generator is itself actively employed in sending out the current over the main line, the current will encounter on its course greater resistance than that of the shunt, and would therefore escape by that path on reaching its point of connection with the main line unless some provision was made to prevent it. This is done by a device located on the shunt, consisting, in effect, of cutting the line, and attaching one end to the fixed end of a spring, and the other end to a contact point, on which rests, normally, the free end of the spring. The spring, being a conductor, transmits, when resting on the contact point, the current, which then passes freely. By means of a key attached to the flexible part of the spring, and having a button at its outer end, the spring may be pressed off its point of contact, and the circuit is broken. This, of course, prevents the current which is sent out from the generator from leaving the main line for the shunt. Before Gray's invention, the common method of operation was, before revolving the shaft which put the generator into activity for signaling, to open the shunt line by pressing the spring off its point of contact, and holding it off while sending the signal. This was done by pushing the button of the key with the thumb or finger. This state of the art was recognized by Gray in his specification. The object of his invention was to dispense with this independent manipulation of the spring in the shunt line, when using the main line for signaling; and he proposed to accomplish that object automatically, by the same effort as that by which the generator is excited. The means he devised for this purpose were these: He put a screw thread upon the outer end of the main shaft carrying the gear for operating the generator, made a corresponding thread upon the inside of a prolongation of the shaft, which he called a "hub." Upon the outer end of the hub he attached a crank having a handle. Near the inner end of the hub he put a collar. On the inside of the box he affixed a flat spring, having, midway of its length, an opening to fit the hub; the spring resting against the inside of the collar. The free end of the spring pressed normally upon a point of contact in the shunt line; the fixed end being also connected with the line. Upon the extreme inner end of the hub was fixed a rigid arm, which was held normally by a spiral spring against the back side of a pin projecting laterally from the wheel on the main shaft. On turning the crank, two things happened: First. The hub was drawn in by turning it on the screw on the end of the shaft. This pressed the flat spring in also, and carried it away from its contact point at the free end, and thereby opened the circuit in the shunt line. One revolution of the hub was sufficient for this. Second. As the wheel and shaft had remained stationary during this first revolution, the arm on the hub was brought over to the other side of the pin on the wheel, and set the latter in motion to excite the generator. During subsequent revolutions, the hub, having been already drawn in, remained there, holding the flat spring out of contact, while the main shaft was revolved and the signal was being given. When the

operation was accomplished, and the crank released the retractile power of the spiral spring threw back the arm of the hub to the other side of the pin. This, of course, turned back the hub on the screw of the shaft to its original position, and allowed the free end of the flat spring to fall back upon its point of contact; the circuit was restored, and the operation was complete. It must be acknowledged that there was a good deal of ingenuity displayed in these devices, and that the invention was one of very considerable merit.

We will now take up the consideration of the legal questions in the case, to see whether, upon their proper solution, and having in view the disclaimer presently to be referred to, the patent can be sustained as one founded upon the invention. The application for the patent was dated January 3, 1881. It recites an application for another patent filed May 11, 1881; the latter, as we understand, having been carved out of the former. And it is expressly stated in the original application that in the application of May 11th the inventor had claimed the peculiar electro-magnet, and also the specific mechanism of the automatic shunting device described in the first application. Having stated that he had made the specific mechanism of the automatic shunting device the subject of an application for another patent, the applicant proceeds to say, "I therefore limit myself in this application to the general or broad claims upon the automatic shunting device." This seems a singular proceeding. By the general rule of patent law, a patent for the specific device would cover all known equivalents, the range of which would be more or less broad, according to the scope of the invention. Such equivalents represent, in legal contemplation, the same invention. One cannot divide an integral invention, or have two patents for the same thing. Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; Pneumatic Tire Co. v. Lozier, 33 C. C. A. 255, 90 Fed. 732; Fassett v. Manufacturing Co., 10 C. C. A. 441, 62 Fed. 404. The present case is not one where the invention contemplates more than one congeries of parts which, separately, constitute a distinct organization. It seems a necessary inference that the applicant for this patent sought to gather in and monopolize all means which might be employed for the organization of an automatic shunting device other than such as he had chosen to represent his actual invention. This he could not do. An automatic shunting device might be constituted of any combination of means capable of performing its function. One cannot thus preclude all others from inventing means which will automatically produce the same result. The applicant followed up his disclaimer in the specification and the limitation which he had imposed upon himself by correspondingly broad and general claims. They are these:

"I claim: (1) The combination, with a magneto or dynamo electric machine, of a main circuit and a shunt or short circuit around said machine, and means for automatically breaking such short circuit upon and continuously during the operation of the machine. (2) The combination, in a dynamo or magneto electric machine, of a main circuit, a shunt of low resistance around the coils of the armature, a key in said shunt, and mechanism whereby said key is automatically opened upon and continuously during the operation of the machine; said key being closed and held closed automatic-

ally when and while the machine is not in operation. (3) The combination of the driving shaft of a dynamo or magneto electric machine, a sleeve mounted thereon in such manner as to have a determinate longitudinal movement thereon, and a circuit breaker automatically operated by the longitudinal movement of the sleeve."

The first claim was held void by the circuit court upon the ground that it was equivalent to a claim for a function. The other claims are founded on the same purpose, and are exposed to a like objection. Thus, in the second claim, after including the elements of the familiar organization,—that is to say, the generator, the main circuit, a shunt of low resistance around the coils of the armature, and a key in said shunt,—the applicant adds:

"And mechanism whereby said key is automatically opened upon and continuously during the operation of the machine, said key being closed and held closed automatically when and while the machine is not in operation."

The suggestion is that, in a machine in common use, "mechanism" be incorporated which will produce a certain stated result. But what "mechanism"? None is indicated. The peculiar mechanism invented by the applicant is expressly shut out, and there is no reference in the claim to the specification. How could the workman endeavoring to construct the apparatus know how to proceed? He is left to invent the mechanism which will produce the contemplated result. It amounts to no more than that, observing a want, a man should lay claim generally to all means which would meet it. The truth is that the kernel of the invention was taken out of this, and made the subject of another application. Having disclaimed it, the patentee cannot now claim that invention to be within the scope of the patent here in suit. Thomas v. Spring Co., 23 C. C. A. 211, 77 Fed. 420.

The same observations will apply to the third claim. This claim is for a driving shaft of a generator, a sleeve mounted thereon in such manner as to have a determinate longitudinal movement on the shaft, and a circuit breaker automatically operated by the longitudinal movement of the sleeve. But what is to be the manner of the mounting of the sleeve? And what is the construction of the "circuit breaker"? And how is it organized with the sleeve? The mechanic could not understand without referring to the specification of the mechanism; and if he took that for his guide, with such variations as his own skill should suggest, he would be building within the bounds of the disclaimer. Moreover, a sleeve mounted on a shaft in such manner as to give it a determinate longitudinal movement thereon, associated with mechanism for controlling the current by opening and closing the points of contact in the line, was an organization of electrical apparatus which had been in use since 1872, as is shown by the patent to Edison, No. 131,343, for transmitters and circuits in printing telegraphs. It is true that it was not there employed for the identical use or purpose for which it is employed in this patent; but it seems clear that by a very simple and obvious modification it could be used for completely opening and closing the circuit. Of course, we are not to be understood as suggesting the Edison patent as an anticipation of Gray's.

The reference is made for the purpose of indicating that the field was not then open for a broad invention which would include all combinations which would meet the requirements of the claim we are now considering.

The complainant has appealed from that part of the decree which dismisses the bill as to the first claim; but we think the appeal was premature, and that we are not authorized to entertain it. It is contended, in support of the appeal, that the act of June 6, 1900, amended the seventh section of the act of March 3, 1891, but left standing the statute of February 18, 1895, which was an amendment of the act of 1891, and that by the act of 1895 an appeal was given from an interlocutory order or decree denying an injunction. We are of opinion, however, that the act of 1900 amended the act of 1891 as amended by the act of 1895. The act of 1900 declares that the act of 1891 "shall be amended so as to read as follows." This reference to the act of 1891 is to section 7 thereof as it stood at the date of the passage of the act of 1900, which latter gives an appeal only from interlocutory orders or decrees granting or continuing an injunction. In this conclusion we agree with the circuit courts of appeals in the Seventh and Second circuits in Wire Co. v. Boyce, 104 Fed. 172, and Westinghouse Air-Brake Co. v. Christensen Engineering Co., Id. 622, respectively.

It is further contended that, as the decree finally disposes of the first claim of the patent, an appeal would lie independently of the statute. But as that part of the decree did not finally dispose of the whole case, which was retained for the purpose of an accounting upon the claims held valid, the right to appeal from the dismissal of the bill as to the first claim would be suspended until the final decree, when that action and any other which might be prejudicial could be brought up on one appeal. The other course would sanction the bringing up of a case "piece-meal." In thus holding we are in agreement with the opinion of the circuit court of appeals for the First circuit in Marden v. Printing-Press Co., 15 C. C. A. 26, 33 U. S. App. 123, 67 Fed. 809.

The appeal of the complainant, Western Electric Company, will be dismissed. The appeal of the defendants Williams-Abbott Electric Company, Latty, and Abbott, is sustained. That part of the decree from which their appeal is taken will be reversed, and the cause will be remanded, with directions to dismiss the bill as to the second and third claims of the complainant's patent.