## KELSEY WHEEL CO. v. UNIVERSAL RIM CO.

(Circuit Court of Appeals, Sixth Circuit. February 15, 1924.)

Nos. 3894, 3895.

1. **Patents ⬤⟹328—Anglada, No. 1,095,771, for automobile wheel and demountable rim held valid and infringed.**

The Anglada patent, No. 1,095,771, claims 1, 4, 6, and 7, for automobile wheel and demountable rim, disclose a patentable improvement and are valid. Claims 4, 6, and 7 also *held* infringed, and claim 1 not infringed.

2. **Patents ⬤⟹109—New oath not required to new claims within the specification.**

A new oath to the application *held* not required on the introduction of new claims within the disclosure of the specification.

3. **Appeal and error ⬤⟹339(4)—Decree granting injunction and accounting as to one patent and dismissing bill as to another is interlocutory for all purposes of appeal.**

Where the decree in an infringement suit on two patents sustains and finds infringement of one, grants an injunction, and directs an accounting, but dismisses the bill as to the other, the entire decree, for the purposes of appeal, is interlocutory, and an appeal by complainant from the dismissal must be taken within 30 days, under Judicial Code, § 129 (Comp. St. § 1121), as from an interlocutory decree denying an injunction.

Appeals from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Universal Rim Company against the Kelsey Wheel Company. From the decree, both parties appeal. Modified and affirmed on defendant's appeal, and complainant's appeal dismissed.

Edward Rector, of Chicago, Ill., and Wm. J. Belknap, of Detroit, Mich., for Kelsey Wheel Co.

Wallace R. Lane, of Chicago, Ill. (Arthur Wm. Nelson, of Chicago, Ill., on the brief), for Universal Rim Co.

Before KNAPPEN and DENISON, Circuit Judges, and HICKS, District Judge.

DENISON, Circuit Judge. This was an infringement suit, brought in the court below by the Rim Company against the Wheel Company, alleging infringement of two patents, granted to the plaintiff May 5, 1914, being, respectively, No. 1,095,771, upon the Anglada application, and No. 1,095,776, upon the Baker application—both pertaining to automobile wheels and demountable rims. Claims 1, 4, 6, and 7, of the Anglada patent are said to be infringed. They are given in the margin.[1] The District Court held that these four claims were valid and infringed, and dircted the usual injunction and accounting; but

---

[1] 1. In combination, in a vehicle wheel, a transversely split tire-carrying rim, a wheel member, means for uniting and aligning the ends of said rim including projections on each side of the split in said rim engaging lugs on said fixed wheel member, and means for detachably securing said rim to said wheel member acting positively to stress said rim and thereby lock said uniting means.

4. A vehicle wheel felly having spaced driving projections on its band, in combination with a flanged tire-carrying rim loosely fitted to said band, a

also held that the Baker patent was invalid. No. 3894 is the defendant's appeal from the holding under the Anglada patent; No. 3895 is the plaintiff's appeal from the adverse decision as to the Baker patent.

[1] When we review the prior art, we agree with the District Court that there was a sufficient margin of invention to support the Anglada patent. Before Anglada, it was familiar practice to provide a supplementary or demountable rim which should surround the felly of the wheel; to provide a permanent flange upon the inner side of the felly against which the demountable rim should be driven back into alignment and locked by a series of wedges between the felly and the rim; to split the rim transversely and give it such tension that, when the ends passed by each other at the split, the rim would partially collapse; and to carry the tire casing upon this supplementary rim, instead of upon the permanent wheel felly. It was also common to provide different kinds of interlocking projections and recesses as between the felly and the rim, so that, in action, the felly would serve as a driving member and compel the equal revolution of the rim. It was, of course, necessary to provide means whereby the free ends would be held accurately in line with each other at the split, which had been done by the ultimate driving of all parts of the demountable rim back against the felly flange; but this permitted imperfect alignment during the driving operation, and required careful scrutiny to see that the result was accurate. Anglada observed also that it was desirable to lock the free ends to such a position that they could not spring back from each other, in case deflation of the tire and some sudden strain might produce a separation of the two ends at this point, thereby loosening the rim from the wheel.

His invention, as it must be interpreted, had reference to two details of modification or improvement. The first was that he made his transverse split of the rim upon a diagonal line instead of at right angles to the edges, or made one set of his co-operating lugs with a beveled or rounded shoulder. He thus procured alignment. The second was that he provided, near each free end of the rim, an inwardly projecting lug, in such position that as the rim was seated and slightly expanded by the wedges, this lug made a close fit with a corresponding lug projecting from the felly and further from the rim split. The result was that this one combination of lug with lug both held and locked the free ends of the rim against any tendency to spring back away from the division line, and also provided the necessary driving connection between wheel and rim. His Figure 5, here reproduced, shows

driving lug on the inner periphery of said rim and fitting between said projections, said rim and lug being transversely split, wedge members spaced upon said felly, between the same and said rim, and means for tightening said wedge members, for the purpose described.

6. A transversely split integrally flanged tire-carrying demountable rim, in combination with a two part driving lug fixed on the inner periphery of the rim, the parts thereof being in abutment at the split in the rim, for the purpose described.

7. A tire-carrying demountable rim transversely split at one point in its circumference, in combination with driving parts fixed in abutting relation upon respective ends of the rim, for the purpose described.

one form. *5,5*, are the abutting lugs at the free ends of the split rim, projecting in. *4,4*, are the engaging lugs coming out from the felly band.

*Fig. 5.*

It is not necessary to review the prior art in detail. We think that Anglada was the first to disclose this double function of the locking lugs, that he was the first to use a diagonally split rim or inclined face lugs in aid of alignment in this combination, and that each of these steps is fairly entitled to be considered a patentable improvement. The principles involved are familiar, and a detailed study of and comparison with the earlier devices would be tedious, and not helpful beyond this case.

The defendant overstresses the theory that the inflated tire will of itself hold the free ends against separation from each other. The tire is not always inflated, nor is the invention applicable alone to ready-to-use spares. Defendant also exaggerates, we think, the perhaps negligible tendency of the driven wedges to lift the rim lugs out of engagement with those on the felly. This result seemingly would not happen if the wedges were rightly located.

[2] The four claims in suit were introduced by amendment, without any new oath. Defendant invokes Steward v. American Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139, and insists that these claims are void, for lack of a new oath. We need not deny that there may be cases where a new oath is needed, merely for new claims properly resting upon the original disclosure, and where there is no change in description or drawing; but, if there may be such cases, this is not one of them. The concepts embodied in the amended claims were not beyond the ideas shown by the specification. See our decisions in Proudfit Co. v. Kalamazoo Co., 230 Fed. 120, 124, 144 C. C. A. 418; General Co. v. Cooper Co., 249 Fed. 61, 64, 161 C. C. A. 121.

As to infringement: A reading of the first claim and comparison with other claims makes clear that it is not infringed by any structure which does not both unite and align the two free ends by projections on each which engage co-operating lugs extending from the wheel. We believe it essential to the invention in this aspect that there should be some kind of beveled or inclined surfaces, bringing about a wedging action as between the lugs on the wheel and those on the rim, whereby, as the rim is being forced inwardly after being placed on the wheel, the free ends, if not in alignment, should be progressively driv-

en to that position. In defendant's structure there is practically a mortise and tenon joint between the two free ends, whereby alignment is permanently effected before the rim is put upon the wheel. There is no beveled contact or wedge action, directly or indirectly, between the two sets of co-operating lugs as the rim is applied; indeed, the lugs on the wheel play no part in securing alignment. It is not controlling that the language of the claim described these "means for uniting and aligning" in general words which, without distortion, could apply to defendant's structure. Westinghouse Co. v. Boyden, 170 U. S. 537, 568, 18 Sup. Ct. 707, 42 L. Ed. 1136. The reasonable view of the specification requires that the co-operating lugs on the wheel member should be deemed a part of the aligning means. Clearly, with this construction of the claim, there was no infringement.

We see no justification for carrying this aligning function into claims 4, 6, and 7 as a limiting element. These three claims are limited to the form shown in Figures 5 or 6, where the driving lug is in the nature of a plate, split by the rim—split so that the two parts abut each other and are held in this abutting position by engaging projections upon the felly, whereby the co-operating pairs of projections hold the free ends together and make a driving connection. Defendant at the time of filing the bill was using this precise construction, except that its rim split was at right angles instead of diagonal. This diagonal split had to do only with the aligning function which we do not find called for by these claims, and that variation is therefore immaterial. It is not important that defendant has added to its' divided rim plate the mortise and tenon joint. Subtraction may often prevent infringement, but addition normally does not.

Our conclusion is that the decree below as to the Anglada patent should be modified, so as to declare noninfringement of claim 1, and in other respects affirmed.

[3] With reference to the decree upon the Baker patent, the appellee in 3895 moves to dismiss the appeal, and thereby presents a much-debated and troublesome question. The decree was entered January 13, 1922, and declared, first, that these four claims of the Anglada patent were valid and infringed; second, that an injunction should issue thereon; third, that there be an accounting in the usual form, relating to such infringement of the Anglada patent; and, fourth, that the Baker patent was invalid "and so much of the bill as relates thereto is dismissed." On February 3d, the defendant appealed, assigning error as to the decree on the Anglada patent. The plaintiff's appeal, assigning error as to the action upon the Baker patent was not taken until May 31st.

A decree completely dismissing an infringement bill is, of course, final. A decree sustaining the patent and directing injunction and accounting is, for purposes of appeal, interlocutory. Humiston v. Stainthorp, 2 Wall. 106, 110, 17 L. Ed. 905. From an interlocutory decree there can be no appeal, unless taken within 30 days (section 129, Judicial Code [Comp. St. § 1121]); and one taken later must be dismissed, since the appellate court gets thereby no jurisdiction. Decrees in patent cases are likely to be of a mixed character and to seem

to be partly interlocutory and partly final, since as to some things relief may be granted subject to an accounting, while as to other things all relief is wholly refused. Decision of the case may be divided between the respective parties, as to different patents originally united in one suit, or presented by bill and by answer, or as to different claims of the same patent. It was thought that the great expense and delay of an accounting, which might become unavailing if the decree for accounting was reversed, justified the change in the law making such interlocutory decrees appealable. The same class of considerations argue in favor of the rule that when any part of the case goes up under appeal from an interlocutory decree, it should all go; but, however desirable that result may be, it cannot justify the assumption of nonexistent appellate jurisdiction.

It is fairly clear that, since the only relief which plaintiff can get by the ordinary first decree in a patent case is one granting an interlocutory injunction, any portion of such decree which denies him relief upon any patent, or any claim, is a "refusal" of injunction "by an interlocutory order," and hence is appealable under the 30-day statute, unless it has such complete finality upon the whole case against plaintiff as to be clearly a final decree and nothing else. The vital question is whether it must be appealed within the 30 days, or else not until after there has been another and completely final decree.

Such an order as is presented in this case as to the Baker patent must be, for appeal purposes, either interlocutory or final; it cannot be sometimes one and sometimes the other. If it is final, the plaintiff not only has the right to appeal at any time within 6 months, but he must appeal within that time, or never. If it is interlocutory, he can never appeal, unless within the 30 days. The often-stated desire to avoid piecemeal disposition of an appeal gives no real help in deciding the preferable rule. Any rule which will avoid this "piecemeal" trouble in one case will compel it in the next. In the present case, both parties have joined in printing the record, both wish the merits of the Baker patent case to be now decided, if we have jurisdiction, and to dismiss this appeal will promote the "piecemeal" evil; but if the decree is final against the Baker patent, and if defendant had not taken advantage of section 129 for an extraordinary appeal, plaintiff would have been forced to bring the Baker controversy here within 6 months, while the whole Anglada controversy was still pending below and would have to come up separately later. It seems that the only way in which the danger of successive appeals in such a case can be avoided is for one party to take his appeal under section 129, as soon as the other party does so, or at least within the 30 days.

The existing confusion in practice justifies a review of the decisions. The question first arose in this circuit in Western Co. v. Williams Co., 108 Fed. 952, 957, 48 C. C. A. 159. There had been a decree for injunction and accounting upon two claims of the patent, but for dismissal of the bill as to the first claim. Both parties appealed within 30 days. Since section 7 of the Court of Appeals Act, in its then existing form (Act June 6, 1900, 31 Stat. 660), did not permit an appeal from an interlocutory order refusing an injunction, it

was necessarily held that plaintiff could not appeal under that section; but it was claimed that this portion of the decree was so far final as to justify an appeal within 6 months, under section 128 of the Judicial Code (Comp. St. § 1120) and section 11 of the Court of Appeals Act (Comp. St. § 1647). The court said:

"But as that part of the decree did not finally dispose of the whole case, which was retained for the purpose of an accounting upon the claims held valid, the right to appeal from the dismissal of the bill as to the first claim would be suspended until the final decree, when that action and any other which might be prejudicial could be brought up on one appeal,"

—and the plaintiff's appeal was dismissed.

In Globe Wernicke Co. v. Macey Co. (C. C. A. 6) 119 Fed. 696, 703, 56 C. C. A. 304, decrees of this character were considered. The bill sought relief as for patent infringement and unfair competition. Upon the hearing of a demurrer to so much of the bill as was directed to unfair competition, an order was entered sustaining the demurrer and dismissing the bill to that extent, and after more than 6 months the bill was dismissed as to the patent. The plaintiff appealed as to both branches, and it was urged that the appeal as to unfair competition was too late, because the decree on that subject had been final, and was more than 6 months old before the appeal was taken. The court declined to accept this view and said:

"Upon such a bill as this, successive final decrees are not pronounced. Interlocutory orders may be entered, which have the effect of disposing of some of the matters of the bill for the time being, and the case proceeds until all the matters are decided, whereupon a final decree is entered."

Again this court had an analogous question in Nashville Co. v. Coca-Cola Co., 215 Fed. 527, 534, 132 C. C. A. 39, Ann. Cas. 1915B, 358. Upon a bill for infringement of trade-mark, there was the usual interlocutory decree for injunction and accounting; but, when the master's report came in, the last decree entered was confined in its terms to passing upon some specific exceptions to the master's report. It was said that this last order, however informal, necessarily "operates to redeclare the adjudications which, up to that time, had been interlocutory and within the control of the court, and which then, for the first time, became final." Although there had been in this case no division of result between the parties by an interlocutory decree, that does not seem to be a distinguishing feature.

The First, Second, and Eighth circuits are in accord with Western Co. v. Williams Co. In Marden v. Printing Press Co., 67 Fed. 809, 15 C. C. A. 26, the Circuit Court of Appeals of the First Circuit, speaking by Judge Putnam, held that so much of the decree as dismissed the bill as to part of the claims of the patent, while the remainder of the decree awarded an injunction and accounting on other claims, was not final, and was not appealable by the plaintiff. He says (67 Fed. 813, 15 C. C. A. 29):

"By the settled modes of proceeding in equity in a cause of this kind, although there may be an interlocutory finding declaring certain claims void and others valid, yet there is only one final decree. It would be contrary to all well-conceived notions to imagine two final decrees in a patent cause of this character."

This was followed by the same court in Groblewski v. Chmiell (C. C. A.) 264 Fed. 325, 327.

In Stromberg Co. v. Arnson (C. C. A. 2) 239 Fed. 891, 153 C. C. A. 19, two patents were joined in one suit, and the decree dismissed the bill as to one and awarded injunction and accounting as to the other. The appeal taken by the plaintiff from that part of the decree against it, but not taken until after 30 days, was dismissed. Circuit Judge Ward said (239 Fed. 892, 153 C. C. A. 20):

"The decree in the present case dismissing the bill on the Richard patent is not final, all the parties being interested in the decree sustaining the Ahara patent, which was interlocutory. It has always been the practice in this circuit to dismiss appeals in patent causes from decrees dismissing the bill as to some claims and sustaining it as to others. This was on the ground that such a decree is not final."

This opinion considers Hill v. Railroad, 140 U. S. 52, 11 Sup. Ct. 690, 35 L. Ed. 331, chiefly relied upon to the contrary, and distinguishes it because the defendants as to whom the bill was dismissed by the first decree had no interest in the subject-matter reserved, and therefore were entitled to consider the decree final as to them. In the Eighth the same rule has now been adopted. Standish Co. v. Champion, 282 Fed. 961. The Circuit Courts of Appeals of the Third, Fourth, and Seventh Circuits have reached conclusions more or less inconsistent with this principle of decision. Historical Co. v. Jones, 231 Fed. 784, 145 C. C. A. 655; Scriven v. North, 134 Fed. 366, 67 C. C. A. 348; Chicago Co. v. Miller Co., 133 Fed. 541, 66 C. C. A. 517. And see our own recent decision in Meurer Co. v. Cleveland Co., 268 Fed. 536, in which we declined to dismiss a somewhat analogous appeal, though that conclusion was rested on the particular facts of that case.

In the Supreme Court, a similar, if not the same, question arose in Ex parte Enameling Co., 201 U. S. 156, 26 Sup. Ct. 404, 50 L. Ed. 707. In a suit upon a single patent containing 12 claims, the decree awarded injunction and accounting as to 5 claims and dismissed the bill as to the other 7. Both parties respectively appealed within 30 days. The Circuit Court of Appeals of the Second Circuit dismissed plaintiff's appeal, probably on the ground that section 7, after 1895, and before its revision as section 129, Judicial Code, did not permit an appeal from the refusal of a preliminary injunction. Upon application for mandamus, the Supreme Court affirmed this ruling, but then considered the question whether the plaintiff had a right to appeal as from a final decree. The court, speaking by Justice Brewer, said (201 U. S. 160, 26 Sup. Ct. 405):

"The decree entered by the Circuit Court was interlocutory, and not final. * * * Plaintiffs brought one suit upon a single patent. The findings of the Circuit Court that 3 of the 12 claims were invalid and that the remaining 9 were valid, but that 4 of them had not been infringed by the defendant, did not break this one suit into 12. They were a guide to the master in his ascertainment of the damages and indicated the scope of the final decree."

It was then held that the exceptional cases, where part of the decree may be final and part interlocutory, do not include cases where there is but a single defendant, and a mandamus was refused.

Whatever doubt there was about the applicable principle of decision seems to be removed by Simmons Co. v. Grier Co., 258 U. S. 82, 42 Sup. Ct. 196, 66 L. Ed. 475, decided in 1922, and treated by the Eighth C. C. A. as now controlling. Groblewski v. Chmiell, supra. The Circuit Court of Appeals of the Third Circuit had made a decree holding the patent invalid, but directing an accounting for the unfair competition. Subsequently an application to modify this decree, as to the patent, was refused on the ground that such decree had become final in that court, or in the court below, and there was no power of revising. The Supreme Court reversed this decision and said (258 U. S. 89, 42 Sup. Ct. 199):

"The prayer for relief based upon infringement of patent, and that based upon unfair competition in trade, were but parts of a single suit in equity. The decree entered pursuant to the decision of the appellate court did not bring the suit to a conclusion for either purpose. As to unfair competition, it evidenced a quasi definitive decision in plaintiffs' favor, but an inquiry before a master still was necessary before final decree could pass; an inquiry not formal or ministerial, but judicial, in order to ascertain the amount of the damages to be awarded. As to the claim of patent infringement, the decree evidenced a quasi definitive decision adverse to plaintiffs, which, if nothing occurred to prevent, would in due course be carried into the final decree. But it did not constitute a separation of the cause, nor dismiss defendant from the jurisdiction for any purpose; necessarily this decision remained in abeyance until the cause should be ripe for final decree; there was nothing to take the case out of the ordinary rule that there can be but one final decree in a suit in equity."

We are unable to see any substantial distinction between a bill which joins allied causes of action for patent infringement and for unfair competition and a bill which joins allied causes of action upon two patents; and we must conclude that we have no jurisdiction of the appeal from so much of the decree as dismissed the bill upon the Baker patent.

The appeal in 3895 is dismissed; the decree in 3894 is affirmed, except as to infringement of claim 1; and the total costs of the two appeals will be equally divided.