## DOWAGIAC MFG. CO. v. SUPERIOR DRILL CO.

### F. P. MAST & CO. v. SAME.

(Circuit Court of Appeals, Sixth Circuit.   April 8, 1902.)

#### Nos. 989, 1,041.

**1. PATENTS—SCOPE—INCIDENTAL ADVANTAGES OF INVENTION.**
    A patentee is entitled to all the uses and advantages of his invention, whether he knew of them or not.

**2. SAME—PATENTABLE INVENTION—PROOF OF COMMERCIAL SUCCESS.**
    The fact that a patented device went at once into extensive public use, and has continued therein, does not of itself conclusively establish either novelty or utility; but if, upon technical grounds, the matter is doubtful, it is persuasive evidence of those qualities, unless it appears that such commercial success was due to other causes.

**3. SAME—VALIDITY.**
    It is no objection to the validity of a patent for an improvement in a physical structure that its utility depends on the use of the structure in a particular manner, when such mode of use is described in the specification in terms intelligible to those skilled in the art.

**4. SAME—INVENTION—NEW COMBINATION OF OLD ELEMENTS.**
    If a new combination of old elements is such that it produces a new mode of operation, and a beneficial result, there may be a patentable invention.

**5. SAME—INFRINGEMENT—CHANGING FORM OF PARTS IN COMBINATION.**
    One does not escape liability for infringement by changing the form or dimensions of the parts of a patented combination, where such change does not break up or essentially vary the principle or mode of operation pervading the original invention.

**6. SAME—GRAIN DRILLS.**
    The Packham patent, No. 557,868, for an improvement in disc grain drills, consisting of a shield extending below the end of the seed conduit, and in front of the same, adjacent to the lower and rear portion of the disc, on its convex side, so as to stand within the angle of the furrow, and having its front and lower edges bent inwardly and brought close to the disc,—its purpose being to keep the furrow clear of obstructions from the land side until the seed has been dropped therein, and also to act as a guide for the seed,—was not anticipated, shows patentable invention, and is valid.   Claims 1, 2, 3, and 6 also *held* infringed by the device used by one of the defendants, and claims 1, 2, and 3 by that used by the other defendant, which was that of the Mast patent, No. 615,727.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

The following are the opinions in the courts below:

### Superior Drill Co. v. Dowagiac Manufacturing Co. et al.

WANTY, District Judge.   Suit is brought on the first claim of patent No. 347,982, issued to W. B. Arnett, on August 24, 1886, which reads as follows:  "A spout on conductor for a seeding machine having its lower end flattened laterally and formed with a delivery orifice elongated in the direction of the line of travel, whereby the spout is enabled to deliver the seed centrally in a narrow furrow."   And on the fifth claim of patent No. 527,621, issued to F. R. Packham, on October 16, 1894, which reads as follows:  "In a furrow opener, a support having a laterally projecting trunnion and a vertically arranged conduit, a lubricating chamber formed in the top

of said support and having a laterally extending passage leading therefrom and ending on the periphery of said trunnion, substantially as specified." And on the first, second, third, and sixth claims of patent No. 557,868, issued to F. R. Packham, April 7, 1896, which reads as follows: "(1) A furrow opener consisting essentially of a frame or support having a conduit therein, a disk journaled on a suitable trunnion on said frame or support which is located in front of the conduit, said frame or support being provided with an extended portion which projects below the lower end of the conduit and in front of the same, said extension being formed at the front to conform to the shape of the side of the disk adjacent to which it is adapted to lie, substantially as specified. (2) The combination with the frame having a conduit therein, and a furrow opening disk journaled at an angle on the frame of a guide shield extending below the end of the conduit and in front of the same, said shield being located within the angle of the furrow opening disk so as to stand wholly within the furrow, substantially as specified. (3) The combination with the supporting frame having a conduit therein, and a disk journaled on said frame at an angle to the line of draft, as described, of a downwardly projecting shield in front of and below the conduit, said shield being curved at the front so as to lie adjacent to the disk and being placed wholly within the path of said disk so as to extend within the furrow formed thereby, substantially as specified. * * * (6) The combination with the frame having a supporting trunnion, and an angularly arranged furrow opening disk thereon, a downwardly projecting shield in the rear of and below said trunnion, said shield being located between the said disk and a line extending through the cutting edge thereof parallel to the line of draft, a lug or projection on said frame, and a scraper connected to said lug so as to bear on the inside of said disk, substantially as specified." And on the fourth claim of patent No. 578,941, issued to F. R. Packham on March 16, 1897, which reads as follows: "(4) The combination with a furrow opening disk and its support of the drag-bars connected to said support, one of said drag-bars being extended forwardly and upwardly in a line behind said disk, and the other drag-bar being extended forwardly and laterally, as well as upwardly, at a different vertical as well as lateral angle to the other bar, both of said bars having a common line of attachment, substantially as specified." These claims all relate to the construction of what is known as the single disk drill for seeding. Grain drills have been a fruitful subject for patents for a great many years, as shown by the 27 patents introduced in evidence by the defendants to show the prior state of the art; and during later years the disk drill has received considerable attention.

The claim sued upon for the infringement of the Arnett patent, No. 347,-982, above quoted, is not for a spout in combination with a disk, but for one to be used in a seeding machine, having its lower end flattened laterally and formed with a delivery orifice elongated in the direction of the line of travel, whereby the spout is enabled to deliver the seed centrally in a narrow furrow. An examination of the specifications shows that Arnett claimed this spout applicable, not only to a disk drill, but to other machines as well. Mr. Packham testifies that grain spouts or conduits with flattened or elongated discharge ends, according to his recollection, were used in connection with hoe and shoe drills six or seven years before the date of the Arnett patent; and we find them in the Wagoner patent, No. 60,096, issued November 27, 1868, and in the prior Arnett patent, No. 312,791, dated November 24, 1885. In this Arnett patent the spout is shown in connection with a disk furrow opener as in the patent sued on. I find this claim to have been anticipated.

The fifth claim of the Packham patent, No. 527,621, refers to the lubricating parts of the device. It had been common for a great many years to provide means for lubricating a journal, and in the prior art relating to grain drills this device is found in the patents issued to La Dow and Bramer, in 1880, and there was no invention in the adoption of it by Packham.

The fourth claim of the Packham patent, No. 578,941, is for the combination with a furrow opening disk and its support of the drag-bars connected to said support, one of said drag-bars being extended forwardly and up-

wardly in a line behind said disk, and the other drag-bar being extended forwardly and laterally, as well as upwardly, at a different vertical as well as lateral angle to the other bar, both of said bars having a common line of attachment. The use of the double drag-bar extending forwardly to a common line of attachment is shown in the Wagoner patent of 1866, the Shepard patent of 1869, the Arnett patent of 1885, the McClelland patent of 1888, and the Packham patents of 1894 and 1896, and was, therefore, old in 1897, when Packham took out this patent. The Wagoner and McClelland patents show double drag-bars extending forwardly at a different vertical angle to bring their forward ends to a common line of attachment, as claimed by Packham in this fourth claim of his patent of 1897.

The main patent relied upon in this suit is the one, No. 557,868, issued in 1896, and it is claimed that the first, second, third, and sixth claims, above quoted, of this patent, solved the problem in grain drills which made successful what had before proved a failure. It is claimed that this solution consisted in a combination and arrangement of parts whereby all act harmoniously, and for the first time made it possible to plant a predetermined amount of grain regularly and evenly at a specified depth, by scattering the seed centrally in a furrow wholly made by the revolving disk. After a review of the prior state of the art, including the 1894 Packham patent, No. 527,621, every feature which enters into the 1896 patent is found, except the guard, extension, guide, or shield, by which names the device to prevent the land side of the furrow from caving in until the grain has been deposited is called in the claims above quoted. This shield, wherever mentioned in the claims, read in the light of the specifications, lies wholly within the path of the disk and forms no part of the furrow opening device. The complainant's expert testified that all of the parts thus brought together were old, except the extension or shield. There are a number of patents in the record which show the use of shields of various kinds to protect the grain from obstructions falling into the furrow until after the seed has been deposited. It is claimed by the defendants that the adding of this shield, which had formerly been used for the same purpose, did not require the exercise of the inventive faculty. The co-operation accomplished by this protecting device, which is located below and in front of the conduit and wholly within the furrow, and is shaped in front so as to conform to the side of the disk, had never before been accomplished. By this construction the disk opens, and the shield prevents the obstructing of the furrow until the grain is deposited, and it tends to deflect the grain against the revolving disk and scatter it in the furrow. The spout ends where the shield or guard begins; but, with the revolving disk and shield, the grain finds its way to the bottom of the furrow scattered in the center more thoroughly than it could be if it was conducted there by the spout, instead of falling against the disk and shield. Although the spout, disk, and shield in different form are found in the prior art, there was no such combination as is effected by this patent; and, although the elements are old, the beneficial result accomplished by this combination has great utility, which is shown by the general adoption of it by manufacturers of seeding machinery, including the defendant company. The defendant company has adopted this shield for the exact purpose set out in the claims of the patent, makes the same combination, and secures the result which has made this single disk drill a commercial success. I find the first, second, third, and sixth claims of patent No. 557,868 valid and infringed.

There is no proof found in the record supporting the allegation in the bill that defendants C. E. Lyle, W. F. Lyle, and N. F. Choate are joint infringers with the defendant company, and the bill will be dismissed as to them, and a decree entered against the defendants the Dowagiac Manufacturing Company and W. F. Hoyt in the usual form.

## Superior Drill Co. v. P. P. Mast & Co. et al.

CLARK, District Judge. In respect to the Arnett patent, No. 359,832, issued in 1887, I need only say that according to the weight of the evidence it was never a success in actual use, constituted nothing more than a patent on paper, never reduced to actual practice, and lacking in the element of

utility. The bill, therefore, so far as based upon this patent, cannot be sustained. I do not think any case for relief against those sued as individuals is sufficiently made out, and the bill is not sustained in this regard. With reference to claim 8, patent No. 578,941, and the claims of patent No. 601,477, here involved, it seems sufficient to say that, looking to the prior state of the art, including the Packham patent of 1896, No. 557,868, if there is anything in these devices by way of improvement which can be regarded as new, it is the particular support and conduit formed integrally, rigidly and strictly limited to the particular construction; and, so limited, there is no infringement. This leaves remaining the really troublesome part of this lawsuit, involving as it does the two questions principally discussed of whether or not, in view of the existing state of the art, there is anything patentable in the Packham invention on which letters were issued April 7, 1896; and, second, how far, in view of the late case of Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856, this court is required to independently consider and decide the very questions already passed on by another court of co-ordinate jurisdiction.

In regard to the first question, it is certainly a serious issue whether the shield, as the same is now adjusted with reference to the conduit and disk in the plaintiff's device, does not appear by actual inspection of the models to perform the function of opening, in part, at least, the furrow, just as it undoubtedly did as used in prior devices under the name of guard, etc. It is true this is claimed not to be any part of its function in the present device; but does this militate against the fact that, although it is an unclaimed function not specified, it is nevertheless a part of the actual use made of it in the combination? On the other hand, although it was not a function, specified or claimed in prior devices, of the guard or shield to hold open the furrow and protect the grain while passing down from the conduit into the furrow, was it nevertheless not plainly a function which it in fact did perform, and does not this appear by actual inspection to have been the case? The distinct claim now made for the combination is that the shield is so adjusted to the conduit that it stands within the line of the furrow, but operates independently of the furrow opening function in older devices, and that its distinct use is to hold open the furrow, and, in combination with the conduit, to protect the grain while falling from the conduit. I am not prepared to say that there is such new and independent testimony introduced in the present case, or that the issues are sufficiently varied from those involved in the case before Judge Wanty, as to require otherwise than that I should accept his judgment as correct to the extent that he actually ruled the same questions which are now involved. It seems to conduce to a more orderly and better administration of the law to accept the deliberately expressed judgment of a court of co-ordinate jurisdiction, unless it very fully and very clearly appears that the case is so different in the evidence as to imperatively require a different result. Although the question has been to me one of no ordinary difficulty, I have decided, as stated, that I should accept Judge Wanty's opinion so far as it goes, because I do not believe that there is now anything new in the case which requires a different ruling, and I think it highly probable that, if it turns out that Judge Wanty's views are not approved by the circuit court of appeals, it will be because that court differs in opinion with him upon the case actually presented to him on the former hearing, and quite independently of anything that has been offered by way of new or additional evidence on the present hearing. I take this course the more readily because the case disposed of by Judge Wanty is now pending in the circuit court of appeals, and I am quite certain and am advised that any ruling now made will go up for review, and the cases can be heard at the same time, and every issue made in both cases disposed of by one judgment of the court, and this is desirable as bringing about the earliest possible termination of the litigation in regard to these patents. I consequently sustain the patent, and grant relief to the extent that Judge Wanty did, and dismiss the bill in all other respects. This result does not seem to require that the costs should be adjudicated otherwise than in the usual way of following the result of a suit.

Thomas A. Banning, for appellant Dowagiac Mfg. Co.
H. A. Toulmin, for appellant P. P. Mast & Co.
Paul A. Staley and Border Bowman, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. These causes were heard together, for the reason that both involve the validity and scope of the patent on which both the cases are founded, as they now stand on appeal. The question of infringement is presented upon facts slightly different in the two cases, but the facts are so nearly identical that both cases may conveniently be disposed of in one opinion. Thus needless repetition will be avoided. There was a cross appeal in the second of the cases above entitled, by the Superior Drill Company, which was complainant in the court below, taken upon the grounds that the circuit court erred in decreeing that certain other of the complainant's patents, which were alleged by the bill to have been infringed, were invalid, and also in dismissing the bill as to other persons who were joined as defendants. This cross appeal was dismissed at the hearing, for the reason that, this being an appeal from an interlocutory decree for an injunction, it was premature, upon the authority of Hohorst v. Packet Co., 148 U. S. 262, 13 Sup. Ct. 590, 37 L. Ed. 443, and Western Electric Co. v. Williams-Abbott Electric Co., 48 C. C. A. 159, 108 Fed. 952.

The bills in both cases were filed by the Superior Drill Company against the appellants, respectively, for the purpose of restraining the alleged infringement of several patents relating to seed drills belonging to the Superior Drill Company, and for profits and damages. In the circuit court (Judge Wanty presiding in the first case, and Judge Clark in the second) all those patents were held void, except one. This was No. 557,868, issued April 7, 1896, to F. R. Packham, which was held valid and infringed in respect to the first, second, third, and sixth claims thereof. A perpetual injunction was awarded, and a reference to the master ordered, to ascertain and report profits and damages. The defendants in both cases have appealed. The cross appeal of the drill company having been dismissed, the controversy in this court relates only to the questions of the validity and the infringement of the Packham patent, above mentioned.

This patent relates to the construction of furrow openers, in the class of grain drills known as "disc drills," and was granted for an improvement in such furrow openers. Specifically, it consists in locating a shield or guard at a particular place in the organization of the furrow opener, and in a particular relation to the other parts of the furrow opener; the purpose being to produce certain results, which will be presently explained. The general composition of grain drills and their mode of operation being well known, it will be necessary to particularly describe only those parts of a drill which are immediately involved in the operations of opening the furrow, dropping and scattering the seed in the furrow, and covering the seed with the soil. As might be expected from the universal use of these implements, which have become so indispensable in the production of grain crops,

a great many inventions and a long list of patents had already developed and spread the knowledge of the art of their construction, and their use, at the time of Packham's invention. In one of the leading forms of these the furrow was opened by a device in the shape of a very narrow double-moldboard plow, which, penetrating the ground at an acute angle, opened and slightly raised the soil on either side, whereupon the seed was dropped through a tube behind and within the wings of the opener, while the soil was thus lifted, and immediately upon the passing forward of the opener out of the way the soil dropped back upon the seed. In another the furrow was made by a wedge-shaped device, called a "shoe," and somewhat in the form of a sharp V, both in its horizontal and its vertical shape, the point dividing the soil, which was pressed sidewise by the wings; and the lower edge of the shoe being also an angle, and the wings flaring outward, the earth was, in consequence, pressed downward while it was being pressed sidewise, thus leaving the furrow in a V shape. The seed was dropped in the furrow immediately behind the shoe, and, the sides of the furrow being impacted, it was necessary to employ a covering device, as a short chain carrying rings dragging behind the shoe, or blades which were set so as to scrape the earth back into the drill, or a press wheel which would crush down upon the seed the upper part of the sides of the furrow. In another, instead of a shoe, the same work was done by using a roller in the form of two concave discs, having their concave sides facing each other, and their edges united in one; the result being that, as the roller moved on its journal, it formed and left the V-shaped furrow of the shoe drill. Some covering apparatus was necessary, as in the case of the shoe drill, and for the same reason.

In recent years the disc harrow has come into general use. As usually constructed, the operative part consists of concave discs, located at equal distances upon a shaft having bearings. In use, these discs, and, of course, the shafts, were set at an angle to the line of draft, and when the harrow was drawn forward the revolving discs would cut into the ground, and scrape upon their concave sides, and partly turn, the soil lying in their wake, leaving ridges larger or smaller, depending somewhat upon the angle at which the discs were set. Thereupon invention began, of means and methods to utilize this form of harrow for the purposes of a seeding drill, and a considerable number of patents were taken out upon such inventions. The general object sought to be obtained was to devise some subsidiary apparatus, which, co-operating with the discs of the harrow, would open a furrow, drop the seed evenly upon the bottom thereof, and then properly cover it. Several of these inventions seem blind enough, but others made some approach toward the definite purpose. These latter we shall more particularly consider when we come to take up the question of the anticipation of the Packham patent. For our immediate purpose we will, however, state the characteristics of a previous patented invention of Packham, upon the construction of which the one in suit was designed to be an improvement. The former patent referred to was No. 527,621, issued October 16, 1894, and was for a seeding machine. The following figure, which includes only those parts of Fig. 1 of the drawings regarded as necessary for the illustration, which, with

a few words of explanation, will enable one to see what the improvement of the later patent was: ·

In this figure, $c^4$ is the drawbar; $g'$ is the seed tube coming down from the hopper, and terminating a little below a horizontal line drawn through the center of the disc; $f^2$ shows where the drawbar of the pressing wheel is attached; and b is the disc journaled at e, the convex side only of the disc being shown. In operation the forward edge of the disc is set to the left of the line of draft, making an angle therewith. The rearward edge of the disc will be to the right of the line of draft, so that when the machine is moved forward the disc will dig a furrow beginning where the forward edge of the disc meets the surface of the ground, growing deeper to the line passed over by the bottom of the disc, and then thinning out to the line where the rear edge of the disc rises out of the ground. During this operation the earth is scraped and lifted sidewise on the concave side of the disc, and, where the disc leaves it, stands in a ridge having a face toward the furrow, more or less perpendicular, according to the angle at which the disc runs to the line of draft. In the illustration shown, the seed drops from the bottom of the conduit into the furrow made by the disc at or about the place where the rear edge of the disc begins to rise out of the earth. When the ground is clean and well pulverized, and the machine moves steadily, the seed would fall through the intervening space between the lower end of the conduit and the furrow in a suitable way. But if clods or stubble or other trash were in the way, the clods might roll into the furrow, as the disc passes by, or the stubble or trash might not be cut off or might extend into the furrow space, or the oscillating motion of the drill might tend to cast some of the seed upon the land side of the furrow; so it seemed a desideratum that a construction should be devised whereby the furrow should be kept clear of obstructions, and the seed be prevented from spilling upon the land outside the furrow while it was being sown and covered. The purpose of the Packham invention, now in question, was to supply this requirement. It consisted in adding a shield to the former construction, extending from the conduit, and on the land side thereof, down into the furrow, and having its forward edge bent a little inwardly, and conformed to the convex surface of the disc, so as to pre-

vent any obstruction from coming into the furrow, or in the way of the falling seed.   The shield was attached to the frame above in a constantly fixed relation to the disc, and so located along the rear and bottom segment of the disc, but at a little distance therefrom, as to follow in the wake of the disc, and just within the furrow made thereby when the machine was in operation; the lower edge of the shield being also bent inwardly to conform to the convexity of the disc, and consequently to the land side of the furrow.   The following figures, 1 and 4, taken from the drawings, show the convex side of the disc, and the form and location of the shield, and, when contrasted with the foregoing figure of Packham's former construction, show the main characteristics of the invention covered by the later patent:

a is the disc, and b³ the shield.   Their relation to each other and the parts with which they are combined will be clearly seen.   It is claimed, as the result of this invention, that the parts are so located and organized as to effect substantially the following operation: While the disc is making the furrow the shield keeps the furrow clear of all obstructions liable to come into it from the front or land side, and while the disc holds the earth up and out of the furrow the seed falls down upon the bottom of the furrow between the disc and the shield; much of it striking against the shield and disc, and being distributed somewhat thereby.   Then the disc lets go the earth, which drops back upon the seed.   Not all of the earth lifted drops back upon the seed, but most of it.   In some conditions of the soil a following wheel is used, which presses a little more of the soil into the furrow, and compacts the whole.   Thus it is said the seed is all cleanly sowed upon the bottom of the furrow, and evenly covered with the earth pulverized by the disc.

It is true that the purpose of deflecting the seed, which is dropped against the inside of the shield, is not mentioned in the specification; but in describing its form it is stated that it extends downwardly, "following substantially the line of the furrow-opening disc," and in the drawings (see Fig. 4, above) it is shown to conform to the convex face of the disc, curving inwardly at the bottom.   It is seen that the obvious consequence of this is that the seed falling upon the inside of the shield would be deflected against the lower portion of the disc, and in

use this is found to be the result. And in Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 19 C. C. A. 13, 72 Fed. 67, it was held by this court that a patentee is entitled to all the advantages of his invention, whether he knew of such advantages or not, and that proposition has been confirmed by our more recent decisions. Frederick R. Stearns & Co. v. Russell, 29 C. C. A. 121, 85 Fed. 218, and Palmer Pneumatic Tire Co. v. Lozier, 33 C. C. A. 255, 268, 90 Fed. 732. And see the learned opinion of Judge Sanborn in National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 709, 45 C. C. A. 544.

From an attentive consideration of the record, and a study of the patent in the light of what is generally known of the art, we think these claims for the invention are substantially well founded; and the invention seems to us to have considerable merit, if, indeed, it was not, as the defendants contend, anticipated by former inventions. The claims of the patent which are said to be infringed in case No. 989 are, 1, 2, 3, and 6; and in No. 1041, claims 1, 2, and 3. These claims read as follows:

"(1) A furrow opener consisting essentially of a frame or support having a conduit therein; a disc journaled on a suitable trunnion on said frame or support, which is located in front of the conduit; same frame or support being provided with an extended portion which projects below the lower end of the conduit, and in front of the same; said extension being formed at the front to conform to the shape of the side of the disc adjacent to which it is adapted to lie,—substantially as specified.

"(2) The combination with the frame having a conduit therein, and a furrow-opener disc journaled at an angle on the frame, of a guide or shield extending below the end of the conduit, and in front of the same,—said shield being located within the angle of the furrow-opening disc, so as to stand wholly within the furrow,—substantially as specified.

"(3) The combination with the supporting frame having a conduit therein, and a disc journaled on said frame at an angle to the line of draft, as described, of a downwardly projecting shield in front of and below the conduit,—said shield being curved at the front so as to lie adjacent to the disc, and being placed wholly within the path of said disc, so as to extend within the furrow formed thereby,—substantially as specified."

"(6) The combination with the frame having a supporting trunnion, and an angularly arranged furrow-opening disc thereon, a downwardly projecting shield in the rear of and below said trunnion,—said shield being located between the said disc and a line extending through the cutting edge thereof parallel to the line of draft, a lug or projection on said frame, and a scraper connected to said lug so as to bear on the inside of said disc,—substantially as specified."

It is contended for the appellants that, having regard to the then existing state of the art, Packham's improvement was only the result of the application of mechanical skill to the knowledge already acquired and disclosed to the public. And if, in truth, this invention was but a step in the normal progress in the skill of the workman, or the result of the observation of a need, and the provision of a remedy by the exercise of the ordinary skill of those conversant with the subject, it was not entitled to a patent, and the defense would be made out. Reference to authority is not needed to support this proposition, which is elementary.

But the fact remains that for many years those in the front rank of the intelligent and ingenious inventors in this department of art

had been devoting themselves to its improvement, and many inventions had been deemed worthy of patents which made some approach toward the result which the present invention reached, but none of them was able to devise an organization so completely adapted to the requirements as this. Such is the strong impression made upon our minds by the testimony exhibited by these records. The public seems to have been of that opinion, and the appellants, by adopting the substance of the invention, as we think they did, bore testimony to its superior utility. The testimony, taken as a whole, is convincing that the invention went immediately into, and has continued in, extensive public use. As has been often said, this fact does not of itself conclusively establish either novelty or utility; but if, upon technical grounds, the matter is doubtful, it is persuasive evidence of those qualities, unless it appears that such commercial success was due to other causes, which is not shown here. Gandy v. Belting Co., 143 U. S. 587, 594, 595, 12 Sup. Ct. 598, 36 L. Ed. 272; Lane v. Welds, 39 C. C. A. 528, 99 Fed. 286.

One of the objections made to the validity of the patent by counsel in the first of these cases (and, if available, it is equally so in the other) is that the invention described in the specifications is rather of the method of use of the physical structure than of the structure itself. This contention is founded upon evidence which tends to establish (and we think it is the fact) that the structure must be operated in a certain way in order to accomplish its purpose; that is to say, the effectiveness of its use is dependent upon its proper manipulation. But that is true of all machinery. It addresses itself to the skill of the operator, and it is expected that he will exercise common skill in adapting it to the conditions in which it is intended to operate.

The evidence referred to is that of a witness (Miller, an expert called by the complainant) who, on cross-examination, was unable to state the precise angle at which the discs should be set to work properly. Undoubtedly, the operator might have to exercise his judgment in order to ascertain the proper adjustment for making the narrow furrow which the indications seem to require. It was held in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, that a specification in letters patent is sufficiently clear and descriptive when expressed in terms intelligible to a person skilled in the art to which it relates. And a similar observation was made in the Telephone Cases, 126 U. S. 1, 536, 8 Sup. Ct. 778, 31 L. Ed. 863.

We are unable to find any tenable ground for the objection.

Another objection to the validity of the patent is that the claims thereof are for mere aggregations of parts, which have no co-operation in use. This objection, if tenable, would be applicable to most, if not all, the inventions which have been patented for constructing disc-harrow drills. It is true that this is not a conclusive answer to the objection, but it would convict the patent office of a long line of error. A strong presumption must arise from the fact that, although such inventions have repeatedly been under consideration, patents have been issued thereon without notice of so fundamental an objection. And the inference is that reason for such an objection was not found to exist. But at all events it is plain that, with respect to

this patent, the objection is not well founded. The parts do efficiently co-operate to produce the useful result. The disc, which is the factor distinguishing this class of drills from those in previous use, cuts, scrapes, and lifts away, and then drops back, the earth. Meantime the shield is keeping the furrow and the space for the falling seed clear, keeping the seed from falling out sidewise on the land, where it will not be covered, and aiding in distributing the seed. The conduit during these operations is carrying down the seed from the hopper, and the frame is supporting the other parts, and holding them in proper relation to each other. Beyond doubt, such facts bring the case within the description of a patentable combination given in Reckendorfer v. Faber, 92 U. S., at page 357, 23 L. Ed. 719. And see Deere & Co. v. Rock Island Plow Co., 28 C. C. A. 308, 84 Fed. 171, for a case much in point.

The proceedings in the patent office on Packham's application for the patent in question were put in evidence, and it is claimed that they have the effect to restrict his claims. From the contents of the file wrapper, it appears that upon the filing of the application the first three claims were objected to, upon references which seem to import that it was understood that the shield had something to do with opening the furrow. Thereupon the first claim was withdrawn, and a new one substituted; the formation of the shield being explained by letter, the applicant saying therein:

"By this arrangement the shield has absolutely nothing to do with opening the furrow, while in the reference devices this is usually the chief function of the shield."

Thereupon the office made the further objection that the first three claims lacked patentable novelty, upon references. To this Packham responded by letter as follows:

"It will be understood that the shield forms no part of the furrow opener; nor is it, in fact, a part of the conduit. The conduit ends where the shield commences, and, as the shield stands within the angle of the furrow-opening disc, the soil remains in the condition left by the rotation of the disc while the seed is dropped from a point above the furrow, thus ensuring the most efficient planting."

And he amended the claims here involved to the form shown in the patent. Upon this explanation and amendment the patent was issued. The effect of the applicant's renunciations was to make it free from doubt as to whether his shield should assist in making the furrow, and whether it should form a part of the conduit. It is not now claimed that it performs either of those functions. If it were so claimed, the proceedings would constitute an estoppel. Thomas v. Rocker Spring Co., 23 C. C. A. 211, 77 Fed. 420. On the contrary, what is now claimed is in full accord with the applicant's disclaimer.

A word of explanation with regard to claim 1 seems proper in this connection. It will be observed that, unlike the other claims, it does not limit the location of the shield to one "standing wholly within the furrow." But in the specification the applicant describes it as standing within the furrow in ordinary circumstances. In his letter to the patent office last above quoted, he states the shield "stands within the angle of the furrow-opening disc." Now, what-

ever doubt there might have been as to whether the claim was limited in the construction of its language by the specification, it was removed by the limitation which he put upon it by his explanation, the consequence of which was the allowance of his patent; and the claim must be read as limited in this respect in the same way as are the other claims.

The further objection is made (and this is the principal reliance of the defendants) that Packham's invention was anticipated by previous inventions of himself and others, or at least so near an approach had been made by such previous inventions that it required only mechanical skill to develop the art in the direction and to the extent shown by his organization. And many patents (not less than 50) are shown for the purpose of illustrating the progress which had been made at the date of his invention. The general characteristics of these kinds of drills, such as hoe drills, shoe drills, and roller drills, and their manner of making a furrow and dropping and covering the seed, have already been described. But a considerable number of the previous patents relate to disc drills. It would require too much space to exhibit them all in detail. We shall, however, refer to such of them, and such of the older art, as seem specially relied upon by counsel, or seem to us most pertinent, and dismiss the others with the remark that we have examined them, and find nothing which comes near to an anticipation of the invention which forms the basis of the suit. Several patents showed and described single-disc furrow openers,—among them, the patent to Bramer in 1886, the patent to McSherry in 1886, and the patent to Packham in 1894, already referred to. Several patents also showed the discs set on a shaft carried at an angle to the line of draft. Among these were a patent to Arnett in February, 1885, and another to the same inventor in December, 1885, and still another was that to Packham in 1894. All these patents, and, for that matter, seed drills generally, showed a vertical conduit or seed spout. Coming now to those which have a part serving as a shield or guard, the first to which our attention is directed, in case No. 989, is a patent to Stinde in 1873. This proves to be a flat disc coulter, running straight ahead of a V-shaped furrow opener having wings, and a seed tube discharging behind and within the rear portion of the wings. The expanding wings carry the earth up and outward while the seed is being dropped, and then let the earth fall upon it. It was substantially the hoe drill with a rolling coulter running ahead of the point of the hoe. It is a very remote reference, and useful only as an illustration of a former construction of grain drills. The Ives patent, of 1875, was for a former construction, partaking of the forms of both the hoe and shoe drill. It contained nothing more pertinent than the ordinary form of such drills, and need not be further considered. The Springer patent, of 1878, was for a form of the hoe drill. The Arnett patent, of February, 1885, was for a disc drill, in which two discs were set in each frame. Opposite to each disc was a flat plate, or "fluke," as it was termed, inclining at the bottom toward the rear part of the disc. The seed dropped upon the fluke, and slid down into the furrow. There was nothing in this

115 F.—57

construction serving as a shield or guard to keep obstructions out of the furrow. The McClelland patent, of 1888, showed a flat disc or rolling coulter opposite to which was a plate set at an angle to it, the forward edge of which plate was brought close to the disc. By the conjoint action of the disc and the plate the earth was pressed back, and the seed was dropped in the furrow thus made. How the seed was covered is not shown, the invention apparently not extending to that part of a drill.

In the records of both these cases is shown a patent to Fuller & Lee, issued in 1892, which is much relied on by the defendants; and, as it seems to us to make the nearest approach to the patent in suit, we shall set it out with more particularity. It was for a grain drill of the disc furrow-opening type, in which the discs are set in segments, each segment carrying two discs; the discs in the segments being set at opposite angles from the line of draft, after the manner of a disc harrow, to resist the tendency of the discs to slew away from or toward the line of draft (according to their set) from the resistance of the earth on the concave side. These segments of discs were impelled forward by push bars loosely attached at their rear end to a crossbar running across the machine, and at their front end to the parts on which the discs were set. Above the segment bar, and connected therewith by a hinge, was a vertical rod, surrounded by a spring. The upper end of this rod was capable of a limited movement up and down through an arm extending over the segment bar from a crossbar behind; thus affording means for the rise of each segment or either end of each segment, if any of the discs should meet obstructions, such as clods, roots, or stones, or should be passing over uneven ground. The seed spouts were brought down from the hopper behind, and were carried down to the rear part of the back or convex side of the discs, and over the furrows made by the latter. The lower end of the spouts flared open toward the discs so as to deflect the falling seed against the discs, or in another form and for the same purpose a spoon-like guide plate was attached to the lower end of the spout on the opposite side from the disc, and it was suggested that this might be so constructed as to operate as a scraper to remove the soil sticking to the disc. But this "guide plate," as it was called, was intended and formed for the purpose of deflecting the seed into the furrow, and (if as suggested) for scraping the dirt from the disc. There is no suggestion of so constructing it as that it would keep the furrow clear, and it is evident that it was not designed for such a purpose, and need not be so constructed as to effect it. Moreover, the relation of the guide plate to the disc was not constant, for while the spouts which carried the guide plate seem to have a fixed position, the discs did not. In operation, all in one segment might rise or be depressed, thus changing their relation to the seed spouts vertically, or one end of the segment might rise, or the other be depressed (situations more likely to happen); the discs and their furrows would vary from the line of draft and of the seed spouts, and their lower surfaces would approach or recede from the guide plate, as the case might be. If the surface of the ground were smooth and even, and there were

no obstructions, the conditions just mentioned might not occur to any appreciable extent; but if the ground were uneven, or contained anything which would disturb the uniformity of the furrow opening, it is easy to see that the seed might be sometimes dropping in the wrong place, and would not be properly covered. From the foregoing statements it clearly follows that the Fuller & Lee patent was not an anticipation of the invention of the patent in suit.

Another patent shown by the defendants in both records is one issued to Henry in 1893 for a disc grain seeder and harrow combined. Like that of Fuller & Lee, it was composed of segments or gangs of discs. Provision was also made for the rise and fall of the discs in the segments. At the end of the seed tubes was formed a moldboard. This moldboard, following the disc, but slightly to one side of it, completed the furrow partly made by the disc, and, as the seed dropped inside the rear part of the moldboard, returned the earth upon the seed, and "fenders" following after formed the earth into ridges. By building these parts to suit the double purpose, the ground was cultivated throughout the space passed over, as it was drilled. The points of resemblance between that invention and the one covered by the Packham patent are too scanty to support a comparison. The patent to Webster in 1893 is also exhibited in both records as an anticipation. This patent was for an attachment to grain drills showing a pair of discs set at opposite angles to the line of draft on a single drawbar divided into four members, two of which carried the boxes in which each disc was journaled. The seed spout descended between the front part of the disc and the corresponding member of the drawbar, and was attached to the latter in front of the axle of the disc, and then turned backward so as to deliver the seed in the furrow behind the disc. A cutter was secured to the front side of the lower end of the seed spout to assist the disc in opening the drills. There is no suggestion that this cutter is to act as a shield to prevent rubbish from falling into the furrow, or to aid in deflecting the seed into the furrow, nor does either its form or location indicate any aptitude for such purposes; it being simply a flat blade, whose single function was that of assisting in opening the furrow. The shield of the Packham invention is entirely wanting, and there is nothing which performs any of its functions; all that is shown being employed in doing that which in the Packham invention is performed by the disc. In the record of case No. 1,041 certain other patents are shown, which are in that case relied upon as anticipations. We will notice specially the most important of them. A patent to Haworth was issued in 1864 for a corn planter, which, being in a closely related art, is, of course, relevant. In this patent the parts involved in opening the furrow and dropping and covering the seed were these: A flat rolling coulter revolving in the line of draft, and snug beside it a moldboard curving outward. The front edge of the moldboard was set close to the coulter, so as to scrape it, and also to keep rubbish from coming into the furrow. The moldboards were attached to the lower ends of the seed spouts, which delivered the seed in the furrow behind the moldboard. To what extent the earth dropped back from the moldboard upon the seed does not appear, but the broad wheels carrying the machine follow in

the wake of the furrow, and doubtless aided in covering the seed and compacting the earth about it. In a later patent to the same patentee the faces of the wheels are grooved, apparently to crowd the earth from the sides to the center of the furrow, as well as to compact it. These Haworth patents did not employ the concave discs of the later art, though there is some oral testimony that in the manufacture the flat discs sometimes turned at an angle to the line of draft, and sometimes they were turned over to an angle with a perpendicular line. This may have been so, though, if it were necessary to decide how the fact was, we should hesitate to depend upon the memory of witnesses running back over so many years, seeing that the patent does not exhibit any such peculiarity, and no further patent was taken out to represent the improvement, if it was such. The mechanical operation of the moldboard of the Haworth seeder is not the same as that of the concave disc of the Packham patent; nor does the shield of the latter perform any part in the opening of the furrow, as does the rolling coulter of the Haworth patent; nor is there any provision for deflecting the seed against the disc, and thereby securing a more even distribution of the seed in the space line within which it is to fall. The most that can be said is that the Haworth patent accomplishes in a general way the kind of result of that of the Packham patent, but it does it by different mechanical means, and less perfectly.

There is testimony tending to prove that there was in use about the year 1892 an attachment upon the outer side of the lower end of the seed tube of Hapgood's disc drill, consisting of a steel shield or knife. This shield was provided for the purpose of keeping the tube from clogging, and was not intended for or adapted to the purposes of the Packham shield. It did not keep the furrow clear, nor did it deflect the seed, which were the principal advantages of the Packham patent. Then there was the McSherry seeding machine, patented in 1886, which shows a disc for opening the furrow; and a seed spout coming down behind the disc, the opening being directly in line with the bearing point of the disc upon the ground. The seed spout was flattened somewhat laterally, and might "be curved or made convex on one face to conform to the convex face of the disc." There was no shield at all, unless the flattened seed tube be called such, and it is idle to claim that it was an equivalent. This fulfills the task of comparing the previous development of the art with Packham's invention, and we see nothing which supports the defense that it was anticipated. The result is that the patent must be held valid. It was not a primary invention, but we think it brought the organization of disc furrow-opening and seed dropping and covering devices to a much higher degree of perfection than had previously been attained. This was done by locating in the right place and in the right manner a shield or guard constructed in the right form to accomplish a better and more useful result. The invention constituted a distinct and valuable improvement, and was patentable for what the claims here involved fairly import; and the patentee and his assigns are entitled to claim as equivalent all such combinations of the same or similar parts organized in a similar manner, and operating to perform a like mechanical result.

It is true, as contended, that the mere bringing together of old elements found in older machines of the same or a kindred art to perform the same functions and to effect the same mechanical result does not constitute patentable invention. We have several times recognized and applied this rule, some of our most recent cases being Campbell Printing-Press & Mfg. Co. v. Duplex Printing-Press Co., 41 C. C. A. 351, 101 Fed. 282; Overweight Counterbalance El. Co. v. Vogt Mach. Co., 43 C. C. A. 80, 102 Fed. 957; Burnham v. Manufacturing Co., 49 C. C. A. 163, 110 Fed. 765.

But the converse of that proposition is equally true,—that, if a new organization of old elements is such that it produces a new mode of operation and a beneficial result, there may be a patentable invention. The decisions to this effect are very numerous. A long list of them is shown in 1 Rob. Pat. § 155, note 4.

The case of Star Brass Works v. General Electric Co., 49 C. C. A. 409, 111 Fed. 398, recently decided by this court, is a very pertinent illustration of a patentable invention shown by the peculiar location of one of the elements of a combination of old elements. It was an invention relating to the construction of the head of a trolley employed in operating cars by electrical power, and consisted in so locating the brush which takes off the current from the circuit as to diminish the friction between the hub of the wheel and the brush to a greater extent than had previously been done, and also, by putting the brush inside the frame, protecting it from injuries to which it had theretofore been exposed.

We have next to consider the question of infringement. For this purpose it will be convenient to show in the first place the figures illustrating the construction of the furrow-opening and seed sowing and covering devices used by the defendant the Dowagiac Manufacturing Company, for all these devices are more or less involved in the use of Packham's invention:

Fig. 1 shows the land side of this defendant's opener, and by comparing it with Packham's, which is shown on a previous page of this opinion, it will be seen that they are practically identical. Fig. 2 shows the reverse side of the defendant's shield and tube facing the disc. Contrasted with this, we here· show, in Fig. 3, the reverse side of Packham's shield and tube:

*Fig. 3*

The only difference is that the seed tube in the defendant's structure is carried down on the shield lower than in Packham's, but it has, though in a diminished degree, the same provision, by cutting away one side of the tube, for deflecting the seed against the disc. But Packham does not specify the precise extent to which the tube shall be carried down, and the principle or mode of operation is the same in the one as in the other. Apparently, the defendant's purpose was to create a safe difference; but to do this something more was required than simply changing the length of one of the elements of the combinations, no essential difference in the function to be performed by that element being created thereby, and the essential characteristic of the invention remaining unaltered. The Packham invention is not obscured by the change, which does not affect its distinguishing feature or the leading purpose thereof,—that of keeping the furrow clear,—though it modifies to some extent the manner of effecting the distribution of the same in the furrow. The case in this respect is much like that of Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294, in which the defendant had introduced an additional spring to aid in the function of the torsional spring of the invention. To the same effect are Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139, and the other cases cited below as applicable to both of the cases before us.

In the case of P. P. Mast & Co., that defendant is building under a patent (No. 615,727) issued December 13, 1898, to P. P. Mast, as assignor to the defendants. The land side of the furrow opener is shown in Fig. 1 as follows:

Contrasted with Packham's structure, shown on a previous page of this opinion, it is seen there is no difference, except that the shield is not carried down quite so low as in the latter. It is carried down as far as to the earth on the land side when in operation, but not into the furrow. The reverse side is shown in Fig. 2, which compared with the reverse side of Packham's structure, shown in Fig. 3, shows that it is identical with the latter, except in the respect that the shield is shortened as just stated:

But Packham did not limit precisely the depth to which his shield should extend. Doubtless it must extend far enough to accomplish the intended purpose.

The specifications and claims of this patent show, as we think, a consciousness of being on dubious ground. After stating that his invention relates directly to a combined furrow-opening and seed-delivering device, the patentee goes on to acknowledge the state of the art as follows:

"I am quite well aware that numerous and varied constructions and arrangements have been devised and disclosed in many letters patent heretofore granted, and that among these have been shown and described furrow-opening and seed-delivering devices employing discs set so as to rotate in a plane at an angle to the line of draft, and employing seed-delivering devices set behind and within the angle of the discs, so as to deliver the grain in the furrow; the lower part of such delivering devices being in some cases wing-like, and substantially in contact with the disc along one edge of such wing, and acting to keep the sod out of the furrow, and thereby assisting to render the furrow in good condition for the grain, and the wing also in-

cidentally protecting the grain from outside influences during its descent into the furrow,"

—And specifically mentions several such patents, but omits the Packham patent, issued about two years before, and which was doubtless the most notable and perfect of all such structures. He calls the shield and the lower end of his seed spout a "winged tube," and says he has provided "a novel manner of securing the tube with its wing in the desired relation with respect to the disc." It was a novel manner as compared with the patents he acknowledged, but not so with respect to Packham's. Further on he says:

"I will now refer to the seed-delivering attachment, which I mount on the drag bar, and carry by said bar, as before indicated. This device consists of a tube, S, preferably of cast iron, and of a plate portion, T, formed with a recess (indicated by the line U) to receive the bar, and with a wing-like portion, V, which co-operates with the disc in delivering the seed into the furrow, and which, in those cases in which the disc runs deep enough in the soil to make a furrow which would tend to cave in, also guards against such accident or incident similarly, so far as this is concerned, to the wing-like plates or parts of the seed-delivering devices acknowledged in the prior art. Bolts, W, or other means, I employ to secure the bar in the seat, U; and the plate, T, and the extension, V, being thus secured to the outside, they are brought in the proper relation to the convex side of the disc, so that the forward edge of the wing-like extension, V, will hug close to the disc, while the rear portion of the same will stand off from the disc, as required in this class of devices, as also indicated by the art as I have acknowledged it above, but in which art my peculiar structural arrangement was absent, and in accordance with which structural arrangement I find my device to be successful in use and economical in manufacture. * * * The tube, with its plate-like part and extension, I arrange and provide to receive and deliver the grain into the furrow; and while this function is not new, as the prior art shows, still my way of making this tube with its plate and extension, and attaching it to the inside of the bar, is new, and a valuable and useful mode of construction."

Here he calls what in Packham's patent is called a "shield" a "wing-like portion," but he attributes to it precisely the functions of Packham's shield, namely, co-operating with the disc in delivering the seed into the furrows, and guarding against the falling in of the soil on the land side, or other similar "incidents," and suggests no other function whatever. Now, the shortening of the shield is only a colorable variation of form, for, according to the specification, it must be brought down far enough to perform the function of keeping obstructions out of the furrow. Moreover, describing and claiming the shield as new amounts to a confession of the patentability of the Packham invention.

It is a rule of law applicable to the structures of both the defendants that one does not escape liability for infringement by changing the form or dimensions of the parts of a patented combination, where such change does not break up or essentially vary the principle or mode of operation pervading the original invention. Cochrane v. Deener, 94 U. S. 787–789, 24 L. Ed. 139; Morey v. Lockwood, 8 Wall. 230, 19 L. Ed. 339; Elizabeth v. Pavement Co., 97 U. S. 126, 137, 24 L. Ed. 1000; Loom Co. v. Higgins, 105 U. S. 585, 26 L. Ed. 1177; Penfield v. Chambers, 92 Fed. 630, 34 C. C. A. 579; Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 36 C. C. A. 375; King Ax Co. v. Hubbard, 97 Fed. 795, 38 C. C. A. 423; McSherry

Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 721, 41 C. C. A. 627; Taylor v. Spindle Co., 75 Fed. 301, 22 C. C. A. 203; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 707, 45 C. C. A. 544.

In Bundy Mfg. Co. v. Detroit Time Register Co. it was held by this court that where the defendant had used a key of a form adapted to perform its function in a time register by pushing it, instead of one performing a like function by turning it (the mode of operation being substantially the same), he was liable for infringement. In King Ax Co. v. Hubbard the defendant had nearly obliterated an opening, which in the patent was one of the parts provided for a plunger in an ax-forming machine, and had changed the other parts so that they, to some extent, participated in relieving the consequences of diminishing the opening; but, the mode of operation remaining substantially the same, we held that the defendant had not escaped infringement. Again, in McSherry Mfg. Co. v. Dowagiac Mfg. Co., the patent in suit was one which related to means for regulating the pressure upon the shoes and their followers in a grain drill. This was done by two horizontal and parallel springs pivotally attached at their forward end to the two drawbars of the shoe, the free end of the springs being depressed or raised by mechanism attached to that end. In the patent the pivoting at the forward end was effected by uniting that end of the springs in the form of a loop, and imbedding them between the two faces of flat castings adapted to receive them, which, when bolted together, clamped fixedly the loop forming that end of the springs. Then there were lugs on each side of the casting, which had eyes, through which were bolts pivoting them to the drawbars of the shoe. The defendant did not use the clamp, but, instead, formed eyes upon the forward ends of each of the springs, and pivotally attached to the drawbars by a bolt running through a spring and a drawbar. Inasmuch as the springs and the clamp of the patent were made integral by rigidly fixing them together, we held that, recognizing the invention as a distinct advance in the art, the pivoting of the forward ends of the springs directly upon the drawbars was substantially the equivalent of uniting the ends of the springs with a clamp, and then pivoting the clamp upon the drawbars. Judge Lurton, who wrote the opinion, justified this conclusion by applying to the case the essential rules indicated by the former decisions of the court,—of first determining the quality and bounds of the invention, and then restraining trespass within its limits. And it was shown how the limits are expanded or contracted by the character of the invention.

In that case the change made was by taking out the clamp and extending the drawbars, while in the Dowagiac Mfg. Co. Case, before us, there is a prolongation of the seed tube.

From what we have said, it is apparent that we are convinced that the invention of the patent in suit is one entitled to recognition as one amply filling the claims in controversy, and that the defendants infringe them.

The decree of the circuit court in each case will be affirmed.