ROBINS CONVEYING BELT CO. v. AMERICAN ROAD MACH. CO.

(Circuit Court, E. D. Pennsylvania. December 16, 1905.)

No. 4.

1. PATENTS—INFRINGEMENT—SUBSTITUTION OF EQUIVALENT PARTS IN COMBINATION.

Infringement of a combination patent is not avoided by the substitution for one of the parts of the patented machine, which consists of a pulley revolving on a shaft, of a pulley having trunnions revolving in bearings at the ends; the two devices being exact mechanical equivalents.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 386.]

2. SAME—IDLERS FOR BELTS.
>   The Robins patent, No. 571,604, for a troughing idler, was not antici-
>   pated, and discloses invention; also *held* infringed.

In Equity. On final hearing.

Dickerson, Brown, Raegener & Binney (Harold Binney and Her-
bert G. Ogden, Jr., of counsel), for complainant.

Frank S. Busser and George J. Harding, for respondent.

HOLLAND, District Judge. The complainant instituted a suit in
equity for an infringement of letters patent No. 571,604, granted No-
vember 17, 1896, to Thomas Robins, Jr., and by him assigned to the
complainant company, a corporation of the state of New Jersey, against
the defendant company, a corporation of the state of Pennsylvania.
The bill prays for an injunction and an accounting. The defenses
are invalidity of the patent and noninfringement.

There are six claims in the patent in suit, the fifth and sixth of
which it is alleged are infringed by the defendant's device. There
was evidence offered to prove the manufacture and sale of troughing
idlers by the defendant, somewhat different from those now manu-
factured and sold by it, which it is conceded were infringements of
the complainant's patent, but the fact that only two machines were
made and the improvement abandoned by the defendant, upon ascer-
taining the existence of the complainant's patent, relieves the court
of the necessity of considering them in connection with this case. The
validity of this patent depends upon whether or not the field as to
troughing idlers was so covered by the prior art that the complainant's
device is only an adaptation of what existed prior thereto. From an
examination of the prior art, I am convinced that the device of the
complainant involves invention.

The patent in the suit was the result of experiments by one Robins,
and had been reduced to actual practice and actual manufacture as
early as July, 1895. The patent, however, was not issued until No-
vember 17, 1896. Prior to 1895 there were two forms of conveying
belt idlers in use, one consisting of a single cylindrical pulley set hori-
zontally, which supported the belt in a flat position, that is, without
its sides being raised, the other was in a troughed form with the sides
raised, where by means of a spool shaped idler formed of a cylin-
drical central section with a cone at each end, the greater diameter
of the cone being at the outside, whereby the edges of the belt were
raised, giving it the form of a trough. In this form there was great
wear and tear of the belt and loss of power by reason of the slip in
the belt caused by the difference in diameter of the idler at the middle
and outer edges.

There was another form of troughing idler used in a patent issued
to Healey in 1878, consisting of cylindrical side pulleys set on an in-
cline in one vertical plane and cylindrical central pulleys set horizontally
in another vertical plane. There was no slip in the belt in the use of
an idler of this kind, but the principal objection to this form, which
rendered it of no practical use, was the fact that the belt in passing
over the cylindrical central pulley set horizontally, was flattened out,

and then, in passing over the pulley set on an incline, was thrown into a trough shape, and this alternating action upon the belt on the horizontal and incline pulleys in a short time split the belt, and rendered it of no value. The defendant's witness, Mr. Walton, testified, as to the construction similar to the Healey patent, that it worked entirely satisfactory as long as the belt lasted, but the acute angle in bending the belt caused it to split in the middle.

In order to obviate the objections to pulleys, such as the spool shaped, where the slipping of the belt caused great wear and tear and loss of power, also the splitting of the belt resulting from the use of the cylindrical pulleys, Robins began experiments early in 1895, which resulted in the construction of the device involved in his patent; the delay in obtaining which was caused by the fact that it was necessary to test the effectiveness of his arrangement of idlers for some time before he could be certain of their utility. The arrangement of idlers involved in the Healey patent was a failure and used to no very great extent, but as soon as the arrangement adopted by Robins in his patent was made known to the public it met with instant recognition and was extensively used by the public. It overcame all the objections found in all previous mechanism of every kind. Pierson M. Walton, however, had constructed idlers with three rollers in the same plane similar to the patent in suit, but subsequent to the construction of Robins without knowing of his patent. His construction, therefore, cannot affect this case.

The other question to be determined is whether or not the defendant's idler, as alleged in the bill, infringes the fifth and sixth claims of the complainant's invention. They are as follows:

"(5) The supporting pulleys L, K, L, the hollow bearings F, therefor, and the horizontal and turn-up hollow shafts secured in the said bearings, and the oil devices mounted on the ends of the turn-up shafts, substantially as set forth.

"(6) In combination, the two brackets or castings suitably supported, the horizontal pulley mounted between them, the turn-up shafts secured in the said brackets or castings, and the pulleys L loosely turning thereon, substantially as set forth."

The specifications set forth the pulleys, turn-up shafts and oil devices in the following language:

"One preferred form of my improved pulley-mounting is as follows: The brackets, F and G (Fig. 5), are secured to a transverse plank or support, as 11. These brackets, F, are cast hollow. The angle or turn-up shafts, J, and the shaft of pulley, K, are preferably of double, extra heavy, one-inch wrought-iron pipe, turned smooth and driven or tapped into the brackets, F. Grease cups, Q, are tapped into the ends of the turn-up shafts. A small hole, j, in the side of the shaft, J, allows the oil or grease to pass into the pulley bearings. All the pulleys, L, K, L, turn freely on their shafts. Special provision may be made for conducting the oil to the center pulley. Thus I have shown a small oil pipe, R, extending from just below the grease cup into the shaft of the center idler, K. The oil from the cup feeds simultaneously into the shaft, J, and tube, R. The return idlers, M, are mounted on a solid steel shaft, N, which turns in the end bearings, G. The bearings are a simple form of ball and socket type, the outer shells of which are cast in two pieces without coring. Oiling is accomplished by the oil tubes, g, which run down through the support, H, into the bearings, G. Small plugs may close the upper end of these tubes to keep out dust. The angle of the turn-up

shafts may vary at will, from 30 degrees to 45 degrees being advantageous in most cases. So, also, the dimensions of the several parts may be proportioned to suit requirements. I do not mean to limit myself to the details shown, but have described what I consider the preferable form of my invention. In Fig. 5 I have omitted the idlers, P, of Fig. 2. These may be mounted and used wherever a tendency of the belt to work off one of the side pulleys, L, is observed."

The complainant's idlers consist of two hollow brackets secured to a transverse plank or support and a horizontal shaft between them upon which the central pulley is placed; two hollow turn-up shafts secured to the outer sides of these brackets or castings and pulleys loosely turning thereon. These three pulleys are placed in the same vertical plane, and grease cups are mounted upon the outer end of the turn-up shafts from which the grease flows through the axis of each turn-up pulley, and thence through the hollow bearing to lubricate the central pulley, without requiring separate grease cups.

The defendant's idlers as now manufactured are mounted the same as those of the complainant, being three in number and in the same vertical plane; but, instead of the hollow turn-up shaft upon which the side pulleys revolve, the defendant has constructed the shaft of the turn-up pulleys integral with the pulleys in the form of trunnions, like the shafts or pintiles of the wheels of a clock or watch, which turn with the pulleys, instead of being nonrotary, and a bracket at the end supports the outer end of the shaft in which the outer end of the trunnions of the side pulley revolves, and upon this bracket there is mounted a grease cup, such as used by the defendant, connected with an opening in the shaft and trunnions through which the oil is conducted for the same purpose and in the same way as in the complainant's devices. Originally the defendant's side pulleys were mounted upon turn-up shafts such as are employed by the complainant; but, upon defendant's examination of the complainant's arrangement of pulleys, turn-up shafts, and lubricating devices, the change was made whereby trunnions were used, instead of having the pulleys revolve upon the shaft. It is very plain that the defendant's change is an exact equivalent for the turn-up shaft of the complainant, and the method of lubrication, introducing the oil by applying the oil to the bearings through an opening in the shafts upon which the pulleys revolve, is exactly the same in both devices. It is true that this is a patent for a combination, and the complainant will be restricted to precisely what it claims, and the doctrine of equivalence will not in such patents be extended so as to preclude others from using the same elementary parts, in different combinations; but where it is so plainly evident that the defendant seeks to utilize the combination devices of the complainant by simply changing the form to the extent of substituting for a shaft upon which the pulley revolves a pulley with trunnions revolving in a bearing at both ends, which is an exact equivalent for the former, he should be restrained.

The conclusions arrived at in the case at bar that this invention involves patentability, and that the fifth and sixth claims have been infringed by the defendant, are fully sustained by the number of decisions on the Hoyt patent, which was for a combination of old elements. McSherry Manufacturing Co. v. Dowagiac Manufacturing

Co., 101 Fed. 716, 41 C. C. A. 627; Dowagiac Manufacturing Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36; Same v. Minnesota Moline Plow Co., 118 Fed. 136, 55 C. C. A. 86; Same v. Fowler, 121 Fed. 988, 58 C. C. A. 643.

Let a decree be drawn in favor of the complainant.